223 S.E.2d 545 (1976)
29 N.C. App. 85
HEATING AND AIR CONDITIONING ASSOCIATES, INC.
v.
Charles S. MYERLY et al., t/a Ernst & Ernst, a partnership.
BRYANT HEATING AND EQUIPMENT COMPANY, a corporation,
v.
Charles S. MYERLY et al., t/a Ernst & Ernst, a partnership.
No. 7526SC859.
Court of Appeals of North Carolina.
April 7, 1976.
Certiorari Denied and Appeal Dismissed June 1, 1976.
*546 Waggoner, Hasty & Kratt by William J. Waggoner and Robert D. McDonnell, Charlotte, for plaintiff appellants.
Kennedy, Covington, Lobdell & Hickman by William T. Covington, Jr., and Stephen M. Courtland, Charlotte, for defendant appellee.
Certiorari Denied and Appeal Dismissed by Supreme Court June 1, 1976.
HEDRICK, Judge.
The plaintiffs in their complaints alleged that Heating employed Ernst to conduct a special investigation of Heating's books, records and transactions to determine whether there had been any employee dishonesty; that the defendant was negligent in the performance of the contract; and that as a result of defendant's negligence the dishonesty of one of Heating's employees, Paul J. Tanner, was not discovered, which resulted in a loss to Heating in the amount of $90,472.60 and a loss to Bryant, in reliance on Ernst's work, in the amount of $102,779.81.
At trial the plaintiffs' evidence tended to show the following: In 1968 and 1969 Bryant was a distributor of heating and air conditioning equipment. Heating was in the business of installing and repairing heating and air conditioning equipment. Heating was owned by officers and employees of Bryant. In April 1968 W. B. R. Mitchell, the president of Bryant and secretary-treasurer of Heating, met with Jim Faulkner, a representative of Ernst, and asked Ernst to prepare a financial statement for Heating for the fiscal year ending 30 April 1968, and also to determine as accurately as possible the net worth of Heating so that the corporation could pay Bill Milner for the value of his stock. Milner was president of Heating and Mitchell had decided to fire him and buy up his stock. Subsequently, Mitchell had another conversation with Faulkner and asked him to make an investigation of Heating and determine whether Paul Tanner, an employee, had been embezzling corporate property, because he had received reports that Tanner had been engaging in such misconduct. On behalf of Ernst, Faulkner agreed to perform all the services requested by Mitchell. In June 1968 Mitchell was shown a pencil copy of the requested financial statement, and Faulkner advised him that Heating's net worth was negative. Mitchell requested that certain accounting adjustments be made so as to give the corporation *547 a positive net worth of about $1,300, and this was done. With respect to the investigation of Tanner's dishonesty, Faulkner reported that he had found nothing to indicate dishonesty on Tanner's part. Mitchell asked Faulkner whether Heating should be liquidated in view of its poor financial condition, and Faulkner answered that the corporation had made good money in the past, "it was a good built-in market" for Bryant, and it should not be liquidated. After these conversations with Faulkner and other employees of Ernst, Mitchell had Milner fired and Bryant purchased his stock in Heating for $2,500. In the following months, Mitchell received in-house financial statements showing that Heating's net worth had reached a large negative figure. He employed the accounting firm of Conrad, Hoey & East to make another investigation of possible dishonesty on Tanner's part. The Conrad firm quickly found that Tanner had embezzled several thousand dollars' worth of corporate property. If Ernst had discovered Tanner's defalcations as it should have done, Mitchell would have had Heating liquidated immediately, and the losses it suffered in subsequent months would not have occurred; additionally, Bryant would not have lost money by extending additional credit to Heating.
Ernst offered evidence tending to show that it was never employed to do anything for Heating other than prepare an unaudited financial statement and determine the net worth of the corporation. Ernst was never asked to investigate the conduct of Paul Tanner; and in April or May 1968, Mitchell had not received any reports of embezzlement by Tanner. None of the Ernst employees who performed accounting services for Heating were ever under the impression that they were supposed to carry out an audit of Heating or investigate Tanner's conduct. Charles S. Myerly, the partner in charge of Ernst' Charlotte office, was never notified that Heating had requested an investigation into the honesty of Paul Tanner; and the policy of the firm is that no such investigation may be undertaken without his approval. When an accounting firm is employed only to prepare an unaudited financial statement, reasonable care and generally accepted accounting principles do not require that it check the accuracy of the client's financial records or investigate the honesty of the client's employees. Heating has been billed for the accounting services performed by Ernst and has refused to pay for these services.
Rule 52(a)(1) provides that:
"In all actions tried upon the facts without a jury . . . the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment."
Where the judge tries a case without a jury, it is his duty to find the facts specially and state separately his conclusions of law and thereby resolve all controversies between the parties raised by the pleadings and the evidence. Davis v. Enterprises, Davis v. Mobile Homes, 23 N.C. App. 581, 209 S.E.2d 824 (1974); G.S. 1A-1, Rule 52.
While the plaintiffs contend that the court failed to make findings and conclusions determinative of all the issues raised, we are of the opinion that the only issues raised by the pleadings and the evidence were: (1) whether there was a contract between the plaintiff Heating and the defendant with respect to the defendant conducting a special investigation of Heating's books, records, and transactions to determine whether there had been any employee dishonesty, (2) whether the defendant negligently performed such a contract, and (3) what damages proximately resulted from such negligence. Obviously, if the court found and concluded there was no special contract for a fraud investigation, there would be no necessity for the court to make findings determinative of the other issues. Our inquiry therefore, with respect to plaintiffs' claims, will be limited to a consideration of plaintiffs' contention that the court erred in finding and concluding that there *548 was no "special contract for a special fraud investigation to be conducted by . . . [defendant] to discover whether or not Tanner or any other employee of Home Confort [a division of Heating] was dishonest.. . ."
The trial court's findings of fact are conclusive if they are supported by competent evidence, even though there may be evidence to the contrary. Electric Co. v. Shook, 17 N.C.App. 81, 193 S.E.2d 392 (1972), affirmed, 283 N.C. 213, 195 S.E.2d 514 (1973); Vaughn v. Tyson, 14 N.C.App. 548, 188 S.E.2d 614 (1972). With respect to whether there was a special contract between Heating and defendant, Judge Ervin made the following pertinent findings of fact:
"The only evidence as to the formation of the special contract between Ernst & Ernst and Htg. & A/C alleged in the Complaint is the testimony of Mitchell as to a telephone conversation between him and Faulkner in late April or early May, 1968. Faulkner denied that any such telephone conversation took place and Mitchell's testimony that it did was not corroborated or supported by any evidence of any kind, either written or oral. No witness testified that Mitchell ever told him about or mentioned such a telephone conversation during the six years intervening between the time Mitchell said it occurred and the time of trial."
"The evidence of record fails to persuade the Court by its greater weight that the asserted telephone conversation between Mitchell and Faulkner upon which Htg. & A/C relied to establish the formation of the special contract alleged in the Complaint and which Faulkner denied ever occurred, was substantially as related by Mitchell in his testimony given after a lapse of six years and without any notation, memorandum or corroboration and the Court is unable to find by the evidence and its greater weight what the substance of the asserted telephone conversation was, if it did occur, and the Court finds as a fact that the parties did not enter into a special contract for a special fraud investigation to be conducted by Ernst & Ernst to discover whether or not Tanner or any other employee of Home Comfort [a division of Heating] was dishonest and the Court further finds that the only contract between the parties was a contract for the preparation of financial statements without audit and the preparation of income tax returns for the fiscal year ending April 30, 1968."
While the record evidence is sufficient in our opinion to raise an inference that the plaintiff Heating did employ the defendant to make a special audit of plaintiff's records to determine whether there had been any employee dishonesty, the record is replete with competent evidence that no such contract was ever made between Heating and the defendant. As the record clearly demonstrates, Judge Ervin considered all the evidence and found the facts against the plaintiffs. The evidence supports these findings which in turn support his conclusion.
With respect to defendant's counterclaim against Heating, Judge Ervin made the following finding of fact:
"At its request, Ernst & Ernst rendered accounting services to Htg. & A/C consisting of the preparation of financial statements without audit and the preparation of tax returns for its fiscal year ending April 30, 1968. Said services were reasonably worth $4,295.00 and Htg. & A/C agreed that it would pay to Ernst & Ernst what said services were reasonably worth. Htg. & A/C has not paid anything for said services, although Ernst & Ernst has demanded payment in said amount. There is justly due and owing from Htg. & A/C to Ernst & Ernst the sum of $4,295.00 with lawful interest on the sum of $3,735.00 from August 30, 1968, and on the sum of $560.00 from November 29, 1968."
Plaintiff Heating simply contends that the services rendered by the defendant *549 were "wholly worthless" and that the court erred in entering judgment for the defendant on the counterclaim. Judge Ervin's finding and conclusion that the services rendered to the plaintiff was reasonably worth $4,295.00 is supported by the record, and is binding on appeal.
The judgment that plaintiffs have and recover nothing of the defendant on their claims, and that the defendant recover $4,295.00 plus interest on defendant's counterclaim against the plaintiff Heating is affirmed.
Affirmed.
BRITT and MARTIN, JJ., concur.