IN THE MATTER OF SOPHIA RENEE TRUESDELL

No. 429PA83

(Filed 7 May 1985)

**1. Insane Persons § 12— sterilization of mentally retarded person—necessity for likelihood of sexual activity**

Before an order authorizing the compulsory sterilization of a mentally retarded person can be entered pursuant to G.S. 35-43 on the ground that, because of a mental deficiency not likely to improve, respondent would be unable to care for a child, petitioner must prove by clear, strong and convincing evidence that there is a substantial likelihood that respondent will voluntarily or otherwise engage in sexual activity likely to cause impregnation.

**2. Insane Persons § 12— compulsory sterilization—best interests standards**

A petitioner who seeks an order of compulsory sterilization pursuant to G.S. 35-43 must satisfy certain "best interests" standards listed by the Court of Appeals in *In re Truesdell*, 63 N.C. App. 258, 279-80, 304 S.E. 2d 793, 806. Moreover, the trial judge in his discretion may consider certain other factors he considers to be reflective of the best interests of the respondent in any particular circumstance.

Justice VAUGHN did not participate in the consideration or decision of this case.

APPEAL by petitioner, Mecklenburg County Department of Social Services, pursuant to G.S. 7A-30(1) from a unanimous decision of the Court of Appeals, 63 N.C. App. 258, 304 S.E. 2d 793 (1983), affirming in part and reversing in part the judgment entered by *Griffin, J.*, during the 30 November 1981 Civil Session of the MECKLENBURG County Superior Court, and further remanding the case to the trial court.

*Ruff, Bond, Cobb, Wade & McNair, by Moses Luski, for petitioner-appellant.*

*Haywood, Carson & Merryman, by Eben T. Rawls, for respondent-appellee.*

*Moore, Van Allen and Allen, by C. Steven Mason, for Amicus Curiae, Mrs. Carole Seate.*

*Karen Sindelar and R. Bradley Miller, for Amicus Curiae, Governor's Advocacy Council for Persons with Disabilities.*

*Deborah Greenblatt, for Amicus Curiae, Carolina Legal Assistance, Inc.*

*Blanchard, Tucker, Twiggs, Earls and Abrams, by Irvin B. Tucker, for Amicus Curiae, North Carolina Association for Retarded Citizens.*

*Shelley T. Eason and Eric R. Spence, for Amicus Curiae, North Carolina Association for County Directors of Social Services, Inc.*

FRYE, Justice.

## FACTS

Petitioner, Mecklenburg County Department of Social Services (hereinafter DSS), filed a petition on 30 March 1977, amended on 18 June 1980, pursuant to G.S. 35-36, *et seq.*, requesting the sterilization of respondent, Sophia Renee Truesdell. DSS, in its original and amended complaint, sought the sterilization on the ground that "because of a physical, mental, or nervous disease or deficiency which is not likely to materially improve, the respondent would probably be unable to care for a child or children." Additionally, petitioner alleged in its petition "that the respondent is a mentally retarded person and sterilization would be in the public good and in the best interest of the mental, moral, and physical improvement of the respondent . . . ."

A guardian ad litem was appointed for respondent on 30 May 1980 by District Court Judge William A. Jones. On 27 June 1980, the guardian ad litem filed an objection to the petition for sterilization. Following a hearing on the matter, Judge Jones denied the petition, after construing the statute and concluding as a matter of law "that before an order of sterilization can be entered there must be a finding, *inter alia*, by clear, strong, and convincing evidence, that the respondent is likely to engage in sexual activity," citing and relying upon *North Carolina Association for Retarded Children v. State of North Carolina*, 420 F. Supp. 451 (M.D.N.C. 1976). Also, the court specifically found that there was no evidence that respondent was likely to engage in any sexual activity with any male and made further findings which indicated the lack of a substantial risk of exposure to sexual activity. DSS, pursuant to G.S. 35-44, duly gave notice of appeal, and a trial *de novo* was held in Superior Court on 30 November 1981 before Judge Kenneth A. Griffin.

During this *de novo* hearing in Superior Court, Edward C. Holscher, M.D., qualified as an expert in psychiatry and child psychiatry and Charles E. Warner, M.D., qualified as an expert in the field of medicine with an emphasis in pediatrics. The testimony given by these experts was directed to the question of whether respondent's condition met the statutory elements required by G.S. 35-43, and both felt that sterilization by hysterectomy was in the best interest of Sophia. Daisy Vance, Sophia's caretaker, and other staff members and personnel from Sophia's school for the mentally handicapped also testified. The following facts are undisputed: Sophia, who is profoundly retarded, was 18 years of age as of 6 June 1981, with a mental age of three to five years and an I.Q. of 30. Her level of intellectual functioning will not materially improve over time. Sophia is unable to exist without significant assistance from others. Her well being and comfort will always depend upon the willingness of others to protect her and tend to her basic needs. There is no indication that Sophia is infertile. Her regular monthly menstruation makes it reasonable to assume that she ovulates and is fertile. Sophia's mental retardation renders her unable to care for the needs of a child or children.

The evidence in the record also tended to show that Sophia rides the bus to and from the Metro school for the mentally retarded. The bus picks her up and returns her to her doorstep. She never leaves home or school except in the company of school authorities, her foster mother, or an adult approved by her foster mother. She never runs away from home. She is extremely retiring, shy, and quiet. She does not talk to strangers and does not have friends or social contacts. Her teacher testified that Sophia stays to herself and only moves when asked to. Sophia has not been observed removing her clothes inappropriately during school or engaging in any sexual activity with any other class members at the school.

There was no evidence of Sophia having been sexually active or sexually exploited at school. Daisy Vance did testify that she had observed Sophia rubbing her genital area several years ago and that she had prevented Sophia from continuing such sexual activity since that time. There was testimony that one young man had viewed Sophia as his "girlfriend" and would sometimes hug

her. But there were no other reports from school personnel that Sophia masturbated or rubbed her genitals while at school.

Testimony indicated that Sophia's menstrual period posed problems for her and her caretaker because Sophia was unable to tell when her menstruation began, and she would pull her pad down and stain her sheets and bed. Testimony was introduced about Sophia's ability to utilize various alternative forms of birth control and also how a hysterectomy would affect her and whether such a surgical procedure was the most desirable method of birth control.

After making thirty-three specific findings of fact relative to the foregoing, Judge Griffin denied the petition, stating in his order:

> BASED UPON THE FOREGOING FINDINGS OF FACT THE COURT CONCLUDES AS A MATTER OF LAW THAT Respondent is subject to NCGS Sec. 35-43; that she suffers from a mental disease or deficiency, not likely to materially improve, which renders her unable to care for a child or children; that sterilization would be in the best interest of Respondent. Notwithstanding these conclusions the Court further concludes that the decision in *N.C. Association for Retarded Children v. State of North Carolina*, 430 [sic] F. Supp. 451 (MDNC 1976) precludes it from granting Petitioner's request for sterilization.
>
> EXCEPTION NO. 1
>
> Said decision indicates that before a sterilization may be granted there must be a showing that Respondent is "likely to engage in sexual activity without using contraceptive devices." In the instant case there is no evidence that Respondent is likely, at present, to engage in sexual activity.

Although the petition was denied and judgment was in favor of respondent, the trial judge requested petitioner's attorney to prepare the order, containing findings of fact and conclusions of law. Respondent promptly filed objections to the findings of fact but did not set forth formal cross assignments of error in the record on appeal. Petitioner gave timely notice of appeal to the Court of Appeals. That court agreed that clear and convincing evidence had been presented that Sophia's condition satisfied the

preliminary requisite elements of G.S. 35-43, *i.e.*, that Sophia Truesdell is a mentally retarded person subject to the sterilization statutes with a physical, mental or nervous disease or deficiency that is not likely to materially improve and would probably be unable to care for a child or children.

However, the Court of Appeals, persuaded by the reasoning of the court's decision in *North Carolina Association for Retarded Children v. State of North Carolina*, 420 F. Supp. 451 (M.D.N.C. 1976), held that petitioner failed to prove by clear, strong, and convincing evidence that Sophia was substantially likely to voluntarily or otherwise engage in sexual activity likely to cause impregnation. Furthermore, the court interpreted G.S. 35-43 to include constitutional standards consistent with a strict scrutiny analysis and certain other "constitutional 'best interests' " standards substantially identical to those developed by other jurisdictions. The Court of Appeals held that all these standards must be proved by clear and convincing evidence before a petition for sterilization could be granted. In addition to the sexual activity requirement, three of these requisite standards were not, in the court's opinion, proved by petitioner.

Based on these grounds, the Court of Appeals unanimously affirmed the trial court's denial of the petition for sterilization. In addition, the court reversed in part and remanded the case to the trial court to correct certain findings of facts and conclusions of law not inconsistent with its opinion. From this unanimous decision, petitioner appeals to this Court pursuant to G.S. 7A-30(1).

I.

The primary issue on this appeal is whether the trial court erred in applying the construction of G.S. 35-43 contained within the court's decision in *North Carolina Association for Retarded Children v. State of North Carolina*, 420 F. Supp. 451 (M.D.N.C. 1976), that is, before sterilization may be granted under this statute, DSS must show that respondent would be "likely to engage in sexual activity without using contraceptive devices." *Id.* at 456. Also to be resolved is whether the Court of Appeals was incorrect in requiring that certain standards, which include specific sexual activity, must be met by the petitioner before a sterilization petition could be granted. Although we modify in some respects the opinion of the Court of Appeals, we basically

agree with its rationale and holding. Therefore, our answer to the foregoing questions is no.

Article 7 of Chapter 35 of the General Statutes of North Carolina is entitled "Sterilization of Persons Mentally Ill and Mentally Retarded." Section 35-37 of that article states in relevant part:

> The . . . county director of social services . . . is hereby authorized to petition the district court of his county for the sterilization operation of any mentally ill or retarded resident of the county, not a resident or patient of any State institution . . . considered in the best interest of the mental, moral, or physical improvement of such resident, or for the public good, provided that no operation authorized in this section shall be lawful unless and until the provisions of this Article shall first be complied with.

In defining the duty of the petitioner, G.S. 35-39 provides:

> Duty of petitioner.
>
> It shall be the duty of such petitioner promptly to institute proceedings as provided by this Article in any of the following circumstances:
>
> (1) When in his opinion it is for the best interest of the mental, moral or physical improvement of the patient, resident of an institution, or noninstitutional individual, that he or she be sterilized.
>
> (2) When in his opinion it is for the public good that such patient, resident of an institution, or noninstitutional individual be sterilized.
>
> (3) When in his opinion such patient, resident of an institution, or noninstitutional individual would be likely, unless sterilized, to procreate a child or children who would have a tendency to serious physical, mental, or nervous disease or deficiency; or, because of a physical, mental, or nervous disease or deficiency which is not likely to materially improve, the person would be unable to care for a child or children.

If a hearing is requested and evidence presented, G.S. 35-43 describes what the district judge must find before entering an order for sterilization:

*Hearing before the judge of district court.*

If the judge of the district court shall find from the evidence that the person alleged to be subject to this section is subject to it and that because of a physical, mental, or nervous disease or deficiency which is not likely to materially improve, the person would probably be unable to care for a child or children, or because the person would be likely, unless sterilized, to procreate a child or children which probably would have serious physical, mental, or nervous diseases or deficiencies, he shall enter an order and judgment authorizing the physician or surgeon named in the petition to perform the operation.

The guardian ad litem stipulated in this case and the trial judge found as a fact that Sophia suffers from a "mental deficiency not likely to materially improve and because of the deficiency she would be unable to care for a child." Petitioner argues that respondent's condition, established by these facts, satisfied the requisite elements for sterilization included in G.S. 35-43, *i.e.*, "because of a physical, mental, or nervous disease or deficiency which is not likely to materially improve, the [respondent] would probably be unable to care for a child or children." Consequently, petitioner contends, the judge was required to enter an order for sterilization. Thus, petitioner argues that the petition for sterilization was erroneously denied by the trial court and that the Court of Appeals further erred by engrafting the additional standards to G.S. 35-43.

II.

[1] *North Carolina Association for Retarded Children v. State of North Carolina*, 420 F. Supp. 451 (M.D.N.C. 1976) has generated the primary controversy in this appeal. In that case, a three-judge panel upheld the constitutionality of Article 7 but interpreted the clause, ". . . because the person would be likely, unless sterilized, to procreate a child or children . . .," within Section 35-43 to mean "that the subject is likely to engage in sexual activity without utilizing contraceptive devices and is therefore likely to

impregnate or become impregnated." *Id.* at 456. Therefore, the district court viewed sterilization as unnecessary "unless sexual activity and inability or unwillingness to utilize contraception is indicated by the evidence . . . ." *Id.* at 457.

In the present case, the trial court denied DSS's petition for sterilization because "the decision of *N. C. Association for Retarded Children v. State of North Carolina,* 420 F. Supp. 451 (M.D.N.C. 1976) precludes it from granting Petitioner's request for sterilization." The Court of Appeals affirmed the trial court's denial of the petition and approved of the Federal court's interpretation of the statute. Petitioner argues that the trial court and Court of Appeals should not have relied upon the Federal decision because that decision is not binding on the courts of this state and because "the manner in which the court construed G.S. 35-43 constitutes an unconstitutional and unprincipled exercise in judicial legislation."

G.S. 35-43 expressly authorizes the judge to enter an order for sterilization based upon either of two grounds. The first ground is if the person would probably be unable to care for a child or children. The second ground is if the person would be likely, unless sterilized, to procreate a child or children which probably would have serious physical, mental, or nervous diseases or deficiencies. These are referred to respectively as the non-eugenic and eugenic grounds. The Federal court interpreted the statute as requiring sexual activity within the second ground for obtaining sterilization, the eugenic ground, and then included that same requirement within the first ground—the person's inability to care for a child or children. The Federal court explained its reasoning:

> Although the phrase is not contained in the prior clause, it must have been the sense of the legislature to require only that which is necessary, and unless sexual activity and inability or unwillingness to utilize contraception is indicated by the evidence, there would be no occasion for resort to sterilization.

*Id.* at 457.

Defendant argues that "[w]hile a decision of a lower federal court may be persuasive in a state court on a federal matter, it is

nevertheless not binding, since the state court owes obedience to only one federal court, the United States Supreme Court." 1B. Moore Federal Practice § 0.402(1) n. 36 (2d ed. 1983); *see State v. Barber*, 278 N.C. 268, 179 S.E. 2d 404 (1971); 20 Am. Jur. 2d § 225 (1965). Although we recognize that this Court is not bound by the decision from the Federal court, we are nevertheless mindful of the legal maxim, *ratio est legis amina*, reason is the soul of the law. Because we are persuaded by the reasoning and logic of the Federal court's decision, this Court agrees with the Court of Appeals that G.S. 35-43 was correctly interpreted by the Federal court. Therefore, the Court of Appeals correctly held that the trial court did not err in applying the construction of G.S. 35-43 found in *North Carolina Association for Retarded Children*. Furthermore, we affirm the Court of Appeals' holding that requires the petitioner to prove by clear, strong, and convincing evidence that there is a substantial likelihood that the respondent will voluntarily or otherwise engage in sexual activity likely to cause impregnation before the district court judge may enter an order and judgment authorizing the sterilization procedure.

III.

[2]   The Court of Appeals also reviewed certain constitutional "best interests" standards created by courts in other jurisdictions and selected from these cases certain minimum standards that must be met by petitioner before a sterilization could be ordered. We agree with the Court of Appeals that when the state petitions the court for a compulsory sterilization, some minimal "best interests" standards are constitutionally required. The Court of Appeals adopted from other jurisdictions certain of these "best interests" standards. However, we must recognize that the cases relied upon by the Court of Appeals were exclusively from jurisdictions that had no statute authorizing sterilization. Therefore, these courts were not required to judicially interpret a statute, as is this Court. *See, e.g., Matter of A.W.*, 637 P. 2d 366 (Col. 1981); Annot., 74 A.L.R. 3d 1202 (1976) (jurisdiction of courts to permit sterilization of defective persons in absence of specific statutory authority); Comment, *Sterilization Petitions: Developing Judicial Guidelines*, 44 Mont. L.R. 127 (1983). These state courts were primarily considering the question of whether their courts had jurisdiction, in the absence of legislative authorization, to order sterilization of a mentally defective or incompetent person.

A minority of the courts, some pursuant to the common-law doctrine of *parens patriae*, have chosen to judicially sanction such sterilizations. Annot., *supra.* The courts authorizing sterilization judicially have established certain guidelines, despite legislative silence on the subject. To the contrary, our state is among the few that legislatively authorize and sanction non-consensual sterilization.[1] Nevertheless, we, like the Court of Appeals, are persuaded and influenced by the standards promulgated by the states in other jurisdictions in proceedings of this nature. *Ruby v. Massey*, 452 F. Supp. 361 (D. Conn. 1978); *Wyatt v. Aderholt*, 368 F. Supp. 1383 (M.D. Ala. 1974) (per curiam); *Matter of C.D.M.*, 627 P. 2d 607 (Alaska 1981); *Matter of A.W.*, 637 P. 2d 366 (Col. 1981); *Matter of Moe*, 385 Mass. 555, 432 N.E. 2d 712 (1982); *Wentzel v. Montgomery General Hosp. Inc.*, 293 Md. 685, 447 A. 2d 1244 (1982), *cert. denied*, 459 U.S. 1147 (1983); *In re Penny N.*, 120 N.H. 269, 414 A. 2d 541 (1980); *In re Grady*, 85 N.J. 235, 426 A. 2d 467 (1981); *Matter of Guardianship of Eberhardy*, 102 Wis. 2d 539, 307 N.W. 2d 881 (1981); *Matter of Guardianship of Hayes*, 93 Wash. 2d 228, 608 P. 2d 635 (1980); *Cook v. State*, 9 Or. App. 224, 495 P. 2d 768 (1972). Therefore, we hold that the petitioner who seeks sterilization pursuant to G.S. 35-43 must satisfy the standards listed by the Court of Appeals in its opinion.[2] *In re Truesdell*, 63 N.C. App. at 279-80, 304 S.E. 2d at 806.

The standards listed by the Court of Appeals are not meant to serve as an exclusive list. The trial judge, in his discretion, may consider certain other factors that he considers to be reflec-

---

1. In Comment, *Sterilization Petitions: Developing Judicial Guidelines*, 44 Mont. L.R. 127 (1983) the author lists seven states, in addition to ours, that have enacted such statutes: Arkansas, Delaware, Mississippi, Oklahoma, South Carolina, Utah and West Virginia. "The trend in the last two decades, however, has been either to repeal non-consensual sterilization statutes or to hold them unconstitutional. Ten states repealed their compulsory sterilization statutes in the last decade." *Id.* at 129.

2. G.S. 35-43 provides that a sterilization can be ordered pursuant to a second eugenic ground if "the person would be likely, unless sterilized, to procreate a child or children which probably would have serious physical, mental, or nervous diseases or deficiencies . . . ." The Court of Appeals paraphrases this language within (1)(c) by stating that "the respondent is likely to procreate a genetically defective child . . . ." 63 N.C. App. at 279, 304 S.E. 2d at 806. Although this portion of the statute is not applicable to the instant case, we specifically reject the Court of Appeals' mischaracterization of this provision of the statute.

tive of the best interests of the respondent in any particular circumstance. Examples of these factors are included in the cases cited *supra* from other jurisdictions, which can be relied upon by the trial judge when making specific findings of fact regarding the respondent's best interest.

## CONCLUSION

In reviewing the evidence of the trial court to support the findings, we agree with the Court of Appeals that finding of fact number 10 satisfies the requirement that respondent is capable of procreation. There are no findings to support the possibility of trauma. Additionally, there is insufficient evidence to support a finding that respondent is substantially likely to engage in sexual activity likely to cause impregnation. Instead, the facts indicate that the occasions for Sophia's heterosexual contact are severely limited because she is so closely supervised. However, Sophia may be exposed in the future to more social interaction with her peers. If and when she is not as closely supervised and should increased heterosexual social interaction develop, such evidence may be sufficient to sustain a finding that she is substantially likely to engage in sexual activity which is likely to cause impregnation. However, such prediction and speculation are not within the province of this Court.

We are sympathetic to petitioner's argument that an absence of sexual activity should not preclude the court from granting a sterilization petition where careful consideration of all of the facts indicates that such a procedure would be therapeutically and medically beneficial to respondent. Certainly, in life-threatening or emergency situations where sterilization is medically necessary, a petition could be granted absent a showing of the required factors. N.C. Gen. Stat. § 35-49; *see P. S. by Hardin v. W. S.,* --- Ind. ---, 452 N.E. 2d 969 (1983). However, in the case *sub judice* there is insufficient evidence to prove that Sophia is in imminent danger for her life or that her health is severely jeopardized if a hysterectomy is not immediately performed.

Finally, there are inadequate findings regarding the least drastic means to prevent conception, considering the circumstances of this case.

Therefore, the decision of the Court of Appeals is

Modified and affirmed.

Justice VAUGHN did not participate in the consideration or decision of this case.