RODNEY ROW, Plaintiff v. LEIGH ROW (DEESE), Defendant

No. COA06-1692

(Filed 21 August 2007)

**1. Appeal and Error— untimely notice of appeal**

Defendant's attempt to appeal from the 12 January 2006 contempt order by filing a notice of appeal on 27 June 2006 is dismissed, because: (1) N.C. R. App. P. 3(c)(1) allows a party thirty days after entry of judgment to file and serve a notice of appeal; and (2) the notice of appeal in the instant case was filed more than five months after the entry of the 12 January 2006 contempt order which was a final rather than an interlocutory order. On those same grounds, plaintiff's attempt to appeal from the 12 January 2006 contempt order and 13 January 2006 child custody order by filing a notice of appeal on 20 June 2006 is dismissed. The only appeal properly before the Court of Appeals is plaintiff's 20 June 2006 notice of appeal from the 30 May 2006 order to modify child support and uphold the constitutionality of the child support guidelines.

ROW v. ROW (DEESE)

[185 N.C. App. 450 (2007)]

2. **Child Support, Custody, and Visitation— Supremacy Clause—child support guidelines**

The trial court did not err in a modification of child support and custody case by concluding the child support guidelines are not violative of the Supremacy Clause of the U.S. Constitution based on an alleged failure to comply with the congressional standard under 45 C.F.R. § 302.56 which requires the State to consider and analyze case data on the cost of raising children when performing its four-year review of the guidelines.

3. **Child Support, Custody, and Visitation— child support guidelines—Equal Protection**

The trial court did not err in a modification of child support and custody case by concluding the child support guidelines are not violative of the Equal Protection Clause of the United States Constitution because not only do noncustodial and custodial parents not fall within the definition of a suspect class, but neither the United States Supreme Court nor our Supreme Court has ever held that a suspect class includes noncustodial and custodial parents.

4. **Child Support, Custody, and Visitation— child support guidelines—Procedural Due Process**

The trial court did not err in a modification of child support and custody case by concluding the child support guidelines are not violative of Procedural Due Process rights, because: (1) not only did plaintiff file a motion concerning the constitutionality of the guidelines and request for deviation from the guidelines, but the trial court conducted a two day hearing on the matter; and (2) plaintiff was afforded the opportunity to put on witnesses, cross-examine witnesses, and admit evidence.

5. **Child Support, Custody, and Visitation— child support guidelines—Substantive Due Process**

The trial court did not err in a modification of child support and custody case by concluding the child support guidelines are not violative of Substantive Due Process rights, because: (1) the State has a compelling state interest in regulating child support obligations to ensure that parents support their children so that children will not become wards of the State; and (2) the guidelines establish a rebuttable presumption, and thus the State has narrowly drawn the act to express only the legitimate state interests.

ROW v. ROW (DEESE)

[185 N.C. App. 450 (2007)]

**6. Child Support, Custody, and Visitation— modification of support—findings of fact—calculation of expenses**

The trial court did not err in a modification of child support and custody case by allegedly failing to consider the evidence presented when making its findings of fact, including consideration of expenses for the children totaling $2,650.85 per month, because: (1) the affidavits were competent evidence on which the trial court was allowed to rely in determining the costs of raising the parties' children; (2) the trial court did not err in its calculation of medical insurance when the evidence showed that defendant provided necessary medical coverage through her job for the children since the military did not cover all of her daughter's medical expenses; and (3) if plaintiff wanted the trial court to consider the amount of $2,472 which plaintiff stated was the amount of the tuition for the two months the children are in Hawaii for the summer, he should have increased his monthly expenses for tuition accordingly.

**7. Child Support, Custody, and Visitation— child support guidelines—deviation**

The trial court did not err or abuse its discretion in a modification of child support and custody case by its application and deviation from the child support guidelines, because: (1) the trial court relied on plaintiff's financial affidavit to determine his monthly expense for his children; and (2) based on the evidence before the trial court, the slight deviation was not manifestly unsupported by reason.

Appeal by Plaintiff and Defendant from judgments entered 12 January 2006, 13 January 2006, and 30 May 2006 by Judge William C. Lawton in District Court, Cumberland County. Heard in the Court of Appeals 5 June 2007.

*Mast, Schulz, Mast, Johnson & Wells, P.A., by George Mast, Bradley N. Schulz, and Ron L. Trimyer, Jr., for Plaintiff-Appellant.*

*Armstrong & Armstrong, P.A., by Marcia H. Armstrong, for Defendant-Appellant.*

*Attorney General Roy A. Cooper III, by Special Duty Attorney General Gerald K. Robbins, for the State.*

WYNN, Judge.

"The Supremacy Clause of the United States Constitution provides that federal laws supercede state laws in conflict with federal laws."[1] In this case, Plaintiff Rodney Row contends, *inter alia,* that federal provisions under the Aid to Families with Dependent Children Act (AFDC) pre-empt parts of the North Carolina Child Support Guidelines. Because Congress has not positively required by direct enactment that state law be pre-empted in the area of child support enforcement, we hold that federal law does not pre-empt certain portions of the North Carolina Child Support Guidelines.

Plaintiff Rodney Row ("Plaintiff") and Defendant Leigh Row ("Defendant")[2] married in 1991 and had two children, born in 1991 and 1995. The parties separated in 1999 and on 24 January 2001, the trial court entered an order awarding the parties joint custody, with primary physical custody given to Defendant and ordered Plaintiff to pay child support in the amount of $700.00 per month. Thereafter, the parties filed several motions to modify custody and child support resulting in the first appeal to this Court in which we affirmed in part, vacated in part, and remanded. *See Row v. Row,* 158 N.C. App. 744, 582 S.E.2d 80 (2003) (holding the trial court did not abuse its discretion in finding the best interest of the children require the continuation of primary physical custody with defendant and secondary custody with plaintiff and the trial court failed to make sufficient findings of fact and conclusions of law for this Court to determine whether the Guidelines were followed.).

On 2 February 2004, Plaintiff moved to modify child support and requested a determination of the legality of the 2002 North Carolina Child Support Guidelines ("guidelines").[3] The trial court modified Plaintiff's child support obligation to $1331.80 and denied review of the legality of the Child Support Guidelines. On 22 March 2005, Plaintiff filed a motion for modification of child support and custody, followed by a motion for contempt against Defendant for failing to abide by the 13 November 2001 custody order. On 26 July 2005, Plaintiff filed a supplemental amended motion in the cause to set child support, modification of child support, and determination of

---

1. *Boynton v. Esc Medical System, Inc.,* 152 N.C. App. 103, 109, 566 S.E.2d 730, 733 (2002).

2. Defendant has since remarried and her surname is now Deese.

3. Subsequently, this motion was modified on 5 February 2004.

whether North Carolina Child Support Guidelines comply with the law.

On 12 January 2006, the trial court found Defendant in contempt for failing to make flight arrangements for the Thanksgiving 2003 visitation, as required by the child custody order. A permanent child custody order was entered by the trial court on 13 January 2006. On 30 May 2006, the trial court entered an order which concluded: that the 2002 North Carolina Child Support Guidelines are constitutional, that there was no substantial change of circumstances warranting a modification of Plaintiff's child support; that each party is allowed one dependent exemption as long as Plaintiff pays child support at or above the level he was ordered to pay under the previous order, and that Plaintiff is allowed to claim the older child as a dependent exemption on his federal and state income tax returns.

[1] Preliminarily, we dismiss Defendant's attempt to appeal from the 12 January 2006 contempt order by filing a notice of appeal on 27 June 2006. Rule 3(c)(1) of the North Carolina Rules of Appellate Procedure allows a party thirty days after entry of judgment to file and serve a notice of appeal. Here, the notice of appeal was filed more than five months after the entry of the 12 January 2006 contempt order which was a final rather than an interlocutory order. Accordingly, Defendant's appeal must be dismissed. On those same grounds, we dismiss Plaintiff's attempt to appeal from the 12 January 2006 contempt order and 13 January 2006 child custody order by filing a notice of appeal on 20 June 2006. Thus, the only appeal properly before this Court is Plaintiff's 20 June 2006 notice of appeal from the 30 May 2006 order to modify child support and uphold the constitutionality of the guidelines.

In his appeal, Plaintiff contends that the trial court committed error by: (I) upholding the constitutionality of the guidelines; (II) failing to accurately consider the evidence presented in making its findings of fact in regard to the parent's expenses; and (III) failing to deviate from the child support guidelines.

I.

The standard of review for questions concerning constitutional rights is de novo. *Stetser v. TAP Pharm. Prods. Inc.*, 165 N.C. App. 1, 14, 598 S.E.2d 570, 588-89 (2004) (citation omitted). Furthermore, when considering the constitutionality of a statute or act there is a "presumption . . . in favor of constitutionality, and all doubts must be

resolved in favor of the act." *Kiddie Korner Day Schools, Inc. v. Charlotte-Mecklenburg Bd. of Educ.*, 55 N.C. App. 134, 144-45, 285 S.E.2d 110, 117 (1981) (citation omitted), *appeal dismissed and disc. review denied*, 305 N.C. 300, 291 S.E.2d 150 (1982).

**[2]** Plaintiff first argues that the guidelines "are violative of the supremacy clause of the U.S. Constitution." Plaintiff contends that the guidelines are null and void under the Supremacy Clause for its failure to comply with the congressional standard under 45 C.F.R. § 302.56 which requires the State, when performing its four-year review of the Guidelines, to consider and analyze case data on the cost of raising children.

To understand the basis for Plaintiff's appeal, we must understand the origin of our child support guidelines. North Carolina participates in the federal aid to Families with Dependent Children program ("AFDC"), which provides benefits to certain needy families under the Social Security Act. *See* 42 U.S.C. § 601 et. seq. (2006). As a part of this act, and to qualify for federal funds, North Carolina's child support program must conform with the requirements set forth in Title IV, Part D of the Social Security Act. *See* 42 U.S.C. § 651-669b (2006). Under the federal act, North Carolina must establish child support guidelines for child support amounts and review these guidelines "at least once every 4 years to ensure that their application results in determination of appropriate child support award amounts." 42 U.S.C. § 667(a) (2006). Under Title 45, Section 302.56(h) of the Code of Federal Regulations, which codifies the administrative interpretation of this requirement:

> a State must consider economic data on the cost of raising children and analyze case data, gathered through sampling or other methods, on the application of, and deviations from, the guidelines. The analysis of the data must be used in the State's review of the guidelines to ensure that deviations from the guidelines are limited.

45 C.F.R. § 302.56(h) (2006).

"The Supremacy Clause of the United States Constitution provides that federal laws supercede state laws in conflict with federal laws." *Boynton v. Esc Medical System, Inc.*, 152 N.C. App. 103, 109, 566 S.E.2d 730, 733 (2002). When considering the issues surrounding the Supremacy Clause, the United States Supreme Court has expressed that:

ROW v. ROW (DEESE)

[185 N.C. App. 450 (2007)]

Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, where compliance with both federal and state law is in effect physically impossible, where there is implicit in federal law a barrier to state regulation, where Congress has legislated comprehensively, thus occupying an entire field of regulation and leaving no room for the States to supplement federal law, or where the state law stands as an obstacle to the accomplishment and execution of the full objectives of Congress. Pre-emption may result not only from action taken by Congress itself; a federal agency acting within the scope of its congressionally delegated authority may pre-empt state regulation.

. . .

The critical question in any pre-emption analysis is always whether Congress intended that federal regulation supersede state law.

*Pearson v. C.P. Buckner Steel Erection Co.*, 348 N.C. 239, 244, 498 S.E.2d 818, 821 (1998) (quoting *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 368-69, 90 L. Ed. 2d 369, 381-82, (1986)).

Here, there is no indication that Congress pre-empted the State in this area. The federal statute prescribed minimal requirements and encourages the State to act in accordance with the statutes, in order to receive federal funding. Furthermore, the United States Supreme Court has consistently recognized that

the whole subject of the domestic relations of husband and wife, parent and child, belongs to the laws of the States and not to the laws of the United States. . . . On the rare occasion when state family law has come into conflict with a federal statute, this Court has limited review under the Supremacy Clause to a determination whether Congress has positively required by direct enactment that state law be pre-empted. . . . Before a state law governing domestic relations will be overridden, it must do major damage to clear and substantial federal interests.

*Rose v. Rose*, 481 U.S. 619, 625, 95 L. Ed. 2d 599, 607 (1987) (internal quotations and citations omitted).

At trial, Plaintiff's expert admitted, on cross-examination by the State, that North Carolina's child support guidelines comply with the

ROW v. ROW (DEESE)

[185 N.C. App. 450 (2007)]

federal regulation, 45 C.F.R. § 302.56, but continued to aver, through-out the State's cross-examination, that the guidelines are not eco-nomically sound. Based upon this testimony, Plaintiff argues that use of the incomes shares model by our guidelines is not the best way to determine a parent's child support amount. However, this alone does not make the guidelines unconstitutional. Indeed, at a minimum, North Carolina guidelines: "(1)[t]ake into consideration all earnings and income of the noncustodial parent[,] (2) [are] . . . based on spe-cific descriptive and numeric criteria and result in a computation of the support obligation; and (3) [p]rovide for the child(ren)'s health care needs, through health insurance coverage or other means." 45 C.F.R. §§ 302.56(c)(1)-(3) (2005).

Additionally, North Carolina's guidelines were reviewed by Policy Studies, Inc. ("PSI") in 2002. PSI updated the schedule in order "to consider more current economic factors. . . . [T]he economic factors considered in the update are changes to price levels; measurements of child rearing costs based on more recent data; changes in the fed-eral poverty guidelines; and changes in federal and state tax rates and FICA." Plaintiff's characterization that North Carolina "merely updated the cost tables based on the same assumptions" is somewhat misleading. The review conducted by PSI took into account "current economic data on the costs of raising children[,]" however, North Carolina decided to remain with the income shares model. 56 Fed. Reg. 22335-01 (May 15, 1991). Furthermore, the guidelines were approved by the Secretary of the United States Department of Health and Human Services[4] ("the secretary") and the secretary has taken no action to reduce or suspend the State's federal funds.

Accordingly, we hold that the trial court did not error in deter-mining that the North Carolina Child Support Guidelines are not unconstitutional based on the Supremacy Clause of the United States Constitution.

[3] Plaintiff next argues that the guidelines violate the Equal Protection Clause of the United States Constitution. The Fourteenth Amendment of the United States Constitution guarantees that no state "shall deny to any person within its jurisdiction the equal pro-tection of the laws." U.S. Const. Amend. XIV, § 1. Traditionally, courts employ a two-tiered scheme of analysis when an equal protection claim is made. *Texfi Industries, Inc. v. Fayetteville*, 301 N.C. 1, 10,

---

4. Apart of the secretary's duties is to review and approve the State plans. 42 U.S.C. § 652(a)(3) (2006).

ROW v. ROW (DEESE)

[185 N.C. App. 450 (2007)]

269 S.E.2d 142, 149 (1980) (citations omitted). If the governmental or legislative act disadvantages a fundamental right or a suspect class, the upper tier or strict scrutiny of equal protection analysis is employed. *Id.* at 11, 269 S.E.2d at 149. "[A] class is deemed suspect when it is saddled with such disabilities, or subjected to such a history of purposeful unequal treatment, or relegated to such a position of political powerlessness as to command particular consideration from the judiciary." *Id.* (internal quotations and citations omitted). If the equal protection does not involve a fundamental right or a suspect class, then the lower tier or rational basis of equal protection analysis applies. *Id.*

In this case, Plaintiff contends that non-custodial parents versus custodial parents constitute a suspect class and is analogous to heightened scrutiny afforded gender-based discriminatory statutes. We disagree. Not only do non-custodial and custodial parents not fall within the definition of a suspect class, neither the United States Supreme Court nor our Supreme Court has ever held that a suspect class includes non-custodial and custodial parents. Hence, the trial court did not error by holding that Plaintiff failed to show that the guidelines as applied to Plaintiff violate his Equal Protection Rights.[5]

**[4]** Next, Plaintiff argues that the guidelines violate his Procedural Due Process rights. We disagree.

Our Supreme Court has noted that "[t]he fundamental premise of procedural due process protection is notice and the opportunity to be heard. . . at a meaningful time and in a meaningful manner." *Peace v. Employment Sec. Comm'n*, 349 N.C. 315, 322, 507 S.E.2d 272, 278 (1998) (internal quotations and citations omitted).

Here, not only did Plaintiff file a motion concerning the constitutionality of the guidelines and a request for deviation from the guidelines, the trial court conducted a two day hearing on the matter. Plaintiff was afforded the opportunity to put on witnesses, cross-examine witnesses, and admit evidence. It is apparent that Plaintiff had ample opportunity and did in fact exercise his Procedural Due Process Rights; thus, we find no error.

**[5]** Plaintiff next argues that the guidelines violated his Substantive Due Process rights. We disagree.

---

5. Plaintiff did not set forth an argument with regards to a fundamental right under the Equal Protection Clause, nor did he argue that the State lacked a rational basis to implement the guidelines.

ROW v. ROW (DEESE)

[185 N.C. App. 450 (2007)]

Under Substantive Due Process, "[n]o State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. The U.S. Supreme Court has "recognized that one aspect of liberty protected by Due Process Clause of the Fourteenth Amendment is a right of personal privacy." *Carey v. Population Services Int'l*, 431 U.S. 678, 684, 52 L. Ed. 2d 675, 684 (1977) (internal quotations and citations omitted). This protected right of personal privacy includes activities "relating to marriage, procreation, contraception, family relationships[,] . . . child rearing[,] and education." *In re Truesdall*, 63 N.C. App. 258, 268, 304 S.E.2d 793, 800 (1983), *modified*, 313 N.C. 421, 329 S.E.2d 630 (1985) (citation omitted). "Where certain fundamental rights are involved, the Court has held that regulation limiting these rights may be justified only by a compelling state interest . . . and that legislative enactments must be narrowly drawn to express only the legitimate state interests at stake." *Id.* at 269, 304 S.E.2d at 800 (internal quotes and citation omitted).

Here, the State has a compelling state interest in regulating child support obligations. The State wants to ensure that parents support their children, so that the children will not become wards of the State. Furthermore, the guidelines establishes a rebuttable presumption and

> [i]f, after considering the evidence, the Court finds by the greater weight of the evidence that the application of the guidelines would not meet or would exceed the reasonable needs of the child considering the relative ability of each parent to provide support or would be otherwise unjust or inappropriate the Court may vary from the guidelines

N.C. Gen. Stat. § 50-13.4(c) (2005). By allowing for a rebuttable presumption the State has "narrowly drawn the act to express only the legitimate state interests." *Truesdall*, 313 N.C. at 269, 304 S.E.2d at 800.

Accordingly, the trial court did not err by concluding that Plaintiff's Substantive Due Process Rights were not violated.

II.

[6] Plaintiff further argues that the trial court committed reversible error because it failed to accurately consider the evidence presented when it made its findings of fact. Specifically, Plaintiff challenges the trial court's consideration of expenses for the children and avers

that the trial court miscalculated the monthly expenses at $2,650.85 per month.

The standard of review for findings made by a trial court sitting without a jury is "whether any competent evidence exists in the record to support" said findings. *Hollerbach v. Hollerbach,* 90 N.C. App. 384, 387, 368 S.E.2d 413, 415 (1988). Findings of fact are conclusive if supported by competent evidence, irrespective of evidence to the contrary. *Heating & Air Conditioning Associates, Inc. v. Myerly,* 29 N.C. App. 85, 89, 223 S.E.2d 545, 548, *appeal dismissed and disc review denied,* 290 N.C. 94, 225 S.E.2d 323 (1976).

Here, Plaintiff contends that some expenses credited to Defendant were either incorrect or not calculated for him. However, Plaintiff did not claim certain expenses on his financial affidavit and Defendant did claim certain expenses on her affidavit. Thus, the trial court considered the information as presented by the parties. For example, in Plaintiff's financial affidavit he failed to attribute any part of his mortgage, home tax, insurance, electricity, heat, telephone, grocery, eating out, car payment, gas, transportation for visitation, or maintenance for his vehicle to the children. However, in reviewing Defendant's financial affidavit she attributed part of her expenses for these items to her children.

Now, Plaintiff wants this Court to consider information outside the financial affidavit, *i.e.* expert testimony, in order determine his expenses. But, we refuse to do so. Plaintiff, upon signing his financial affidavit, duly swore "to the truthfulness and completeness of [his] Financial Affidavit." The affidavits were competent evidence in which the trial court was allowed to rely on in determining the cost of raising the parties' children.

Plaintiff also contends that the trial court miscalculated the children medical expenses because the military provides coverage at no charge. However, Defendant presented evidence to show that she provides medical coverage through her job for the children and that this medical coverage was necessary, because the military did not cover all of her daughter's medical expenses. Based on the evidence submitted at the hearing, the trial court did not err in its calculation of the medical insurance.

Furthermore, Plaintiff argues that the trial court failed to consider the tuition he incurred for private school during the summer months. However, based on the information provided by Plaintiff, via

his financial affidavit, his monthly expense for tuition was only $103.00 per child. Considering he has the children for approximately two to two and half months, the trial court correctly determined Plaintiff's total expense for both children at $1,505.25 per year. If Plaintiff wanted the trial court to consider the amount of $2,472.00, which Plaintiff states is the amount of the tuition for the two months the children are in Hawaii for the summer, he should have increased his monthly expenses for tuition accordingly. Based on the financial affidavit submitted to the trial court, we find no error in the findings of fact regarding the children's expenses.

III.

[7] Finally, Plaintiff argues that the trial court committed reversible error and an abuse of discretion in its application and deviation from the guidelines. Specifically, Plaintiff contends that the trial court erroneously applied unconstitutional guidelines to set child support and deviated "insignificantly" from the guidelines. We disagree.

In order to deviate from the guidelines, the trial court: (1) shall hear evidence; (2) make findings of fact relating to the reasonable needs of the child for support and the relative ability of each parent to provide support; (3) if the trial court determines by a "greater weight of the evidence that the application of the guidelines would not meet or would exceed the reasonable needs of the child considering the relative ability of each parent to provide support or would be otherwise unjust or inappropriate the Court may deviate[;]" and (4) if the trial court deviates from the guidelines then it "shall make findings of fact as to the criteria that justify varying from the guidelines and the basis for the amount ordered." N.C. Gen. Stat. § 50-13.4(c) (2005).

"A trial court's deviation from the Guidelines is reviewed under an abuse of discretion standard." *State ex rel. Fisher v. Lukinoff*, 131 N.C. App. 642, 644, 507 S.E.2d 591, 593 (1998). The trial court's "determination as to the proper amount of child support will not be disturbed on appeal absent a clear abuse of discretion, *i.e.* only if 'manifestly unsupported by reason.' " *Id.* (quoting *Plott v. Plott*, 313 N.C. 63, 69, 326 S.E.2d 863, 868 (1985)).

We have determined that the guidelines are constitutional, therefore, we reject Plaintiff's argument concerning the constitutionality of the guidelines. Furthermore, the trial court relied on the Plaintiff's financial affidavit to determine his monthly expense for his children.

After considering both parties affidavits, the trial determined that: ". . . A) $1,505.25/yr. while in plaintiffs primary custody[;] B) $22,610.00/yr. while in defendant's primary custody (10 months of the year), represented $2,261 per month exclusive of costs of school where the children have always attended[;] C) $7,695.00/yr. costs of school."

Based on all the evidence that was before the trial court, we cannot say that its slight deviation was "manifestly unsupported by reason." *Id.* Accordingly, we find no error.

In sum, we hold that the trial court did not error by determining that the 2002 North Carolina Child Support Guidelines were constitutional. Furthermore, we hold that the trial court did not err in its consideration of the evidence and its deviation from the guidelines.

Affirmed in part, dismissed in part.

Judges HUNTER and BRYANT concur.