UNITED STATES of America,
Plaintiff–Appellee,

v.

Edward Bernard BILLUE,
Defendant–Appellant.

No. 92–4054.

United States Court of Appeals,
Eleventh Circuit.

July 14, 1993.

Robert E. Adler, Asst. Federal Public Defender, West Palm Beach, FL, for defendant-appellant.

James G. McAdams, III, U.S. Atty., Nancy Vorpe Quinlan, Linda Collins Hertz, Anne Ruth Schultz and Lisa T. Rubio, Miami, FL, for plaintiff-appellee.

Before KRAVITCH and COX, Circuit Judges, and HOBBS *, Senior District Judge.

HOBBS, Senior District Judge:

Defendant–Appellant, Edward Bernard Billue, was found guilty of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1). Billue now attacks his conviction on three grounds:

(1) the evidence was insufficient to support his conviction;

(2)(a) the district court abused its discretion in permitting the government to impeach a witness it called with a prior inconsistent statement; and

(b) even if such impeaching testimony was properly allowed, the court was in plain error for failing to give an unrequested, limiting instruction as to the use of such testimony;

(3) the district court erred in failing to give a requested instruction on the defense of entrapment by estoppel.

Because we find that the trial court committed no error requiring reversal, we affirm the conviction.

## DOCUMENTARY EVIDENCE

The undisputed documentary evidence introduced at trial revealed that the signature on a pawn ticket [1] received from Northwood Pawn Shop in West Palm Beach was in appellant Billue's name, and that the fingerprint on the ticket was Billue's fingerprint. Northwood Pawn Shop's acquisition and disbursement ("A & D") book reflected that on November 13, 1990, the pawnshop received from Billue a rifle described on Billue's pawn ticket.

## TRIAL TESTIMONY

1. Howard Harris

Howard Harris, a clerk in the Northwood Pawn Shop, testified that on November 13, 1990, he bought the rifle identified on the pawn ticket for fifty dollars and prepared the

---

* Honorable Truman M. Hobbs, Senior U.S. District Judge for the Middle District of Alabama, sitting by designation.

1. Pawn tickets are required by law to be sent by the pawnshop to the police who routinely check to see whether a convicted felon has sold a firearm. At trial, Police Detective John Woods testified that part of his job is to monitor firearm transactions at pawnshops, looking for felons dealing in firearms. One of the pawn tickets detective Woods received from Northwood Pawn Shop identified appellant Billue as the seller of a rifle, listing Billue's description, home address, and driver's license number.

pawn ticket. Harris examined the driver's license of the person signing the pawn ticket, and verified from examining the picture on the driver's license that the person before him was Edward Bernard Billue. As required by law, Billue placed his thumbprint on the pawn ticket. He also signed the pawn ticket immediately above the statement:

I verify that I am eighteen years or older, and I am the rightful owner of the above described property which is being sold or pledged, or that I am entitled to sell or pledge such goods, and that the property is clear of all liens and encumbrances, including liens for past due child support. If proven otherwise, I promise full restitution, and understand that I will be criminally prosecuted to the fullest extent of the law.

Harris testified that he did not read the statement to the seller of the firearm.

Harris also identified the A & D book, which pawnshops are required by law to keep. He testified that as to the firearm in question, the A & D book contained the date of the transaction, the make and model of the gun, the serial number, "the name and address of the individual we got it from," and its costs.

Harris acknowledged that the law requires the information on pawn tickets and in the A & D book to be truthful. Both the A & D book and the pawn ticket verified that Billue was the seller of the firearm.

Harris' Cross–Examination

On cross-examination by the defense, Harris said he could not recall whether Billue brought in the rifle, nor could he say whether Billue touched the rifle. He testified that there may have been another person who brought the rifle into the store, and that he did not recall to whom he paid the fifty dollars. Harris also testified on cross-examination that on some occasions persons who lack IDs recruit those having ID to make a firearm sale.

2. Loretta Wilson

Loretta Wilson, the daughter of Northwood Pawn Shop's owner, was also working in the shop on November 13. She testified that Billue approached her at the jewelry counter when he entered the store. According to Wilson, Billue had been a customer of the pawnshop on several prior occasions and was not carrying a firearm on the day in question.

Wilson testified that a few minutes after Billue entered the store a man whom she had never seen previously approached Billue. She testified that the man appeared to be "needing more cocaine" and was badgering Billue to let him use Billue's ID in order to sell a gun.

Wilson testified that ordinarily she would tell customers not to harass other customers for their IDs, but in this instance she failed to say anything even though the stranger "hounded and hounded" Billue to allow him use of the ID. She testified that in response to Billue's question whether he would get in trouble if he allowed the other man to use his ID, she replied that he would not get in trouble if she put the other man's name on the pawn ticket to reflect that the gun did not belong to Billue. Wilson also stated that although it would have been normal to ask Billue if he was a convicted felon, she failed to do so.

Wilson further testified that had Billue told her he was a convicted felon, she would not have told him it would be acceptable to volunteer his ID. Wilson testified that upon receiving a phone call, she left the area when Harris wrote up the sale and that neither she, nor anyone else, placed the other man's name on the pawn ticket.

Wilson's Impeachment

When Wilson was initially contacted by the police, she did not remember that a stranger was involved in Billue's sale of the firearm, but she recalled the presence of the stranger some time after Billue's investigator contacted her.

The Government impeached Wilson by asking if she had ever been convicted of knowingly and willfully conveying false information to a police officer. She denied any such conviction until confronted with the record of her conviction.

## DISCUSSION

In this appeal, Billue insists that although the documents incident to the sale of the firearm show him as the seller, that actually he only allowed another to use his ID to make a sale which could not be effected without one. We now address Billue's sufficiency argument and the other issues he raises.

### Sufficiency Of The Evidence

■ We review the sufficiency of the evidence in the light most favorable to the prosecution to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Billue contends that there was insufficient evidence to convict him on the requisite element of knowing possession of the firearm.[2]

■ This court does not evaluate witnesses' credibility. Such determinations are within the exclusive province of the jury. *United States v. Parrado,* 911 F.2d 1567, 1571 (11th Cir.1990), *cert. denied,* 498 U.S. 1104, 111 S.Ct. 1005, 112 L.Ed.2d 1088 (1991). In this case the jury could disbelieve the improbable testimony of Loretta Wilson and believe that the records with Billue's thumbprint and signature over the statement that he is "the rightful owner" of the firearm spoke the truth.

A jury reasonably knew that the sole reason for the thumbprint and the signature on the pawn ticket was to identify, and have a representation from, the seller. Howard Harris, who had been in the business of buying firearms at pawnshops for over a decade, knew that it was illegal knowingly to put false information on the pawn ticket, which he knew would be reviewed by the police. The A & D book which he was required to keep in connection with such sales also showed Billue as the seller of the firearm.

A reasonable jury could believe beyond a reasonable doubt that Billue was in knowing possession of the firearm and that Harris did not deliberately falsify the documents. After weighing the evidence and determining the witnesses' credibility, the jury found Billue guilty. The evidence was sufficient for the jury to reach this determination, and Billue's argument on this ground must fail.

### The Impeachment Testimony of Harris

The government sought to impeach Harris' statement that he could not recall whether a third person was involved in the sale by asking him if he had told an Alcohol, Tobacco and Firearms (ATF) agent that defendant Billue was alone at the time of the transaction. Harris testified that he could not recall what he had told the officer. He testified: "Mr. Billue gave me his ID. I used that. He signed the ticket and I got his thumbprint. That's all that I am positive about." The government then sought to question ATF Agent Barborini as to what Harris said to him.

The defense strenuously objected, urging that the testimony of Officer Barborini was not impeachment because Harris had only said he could not recall what he had said to Agent Barborini. Defendant urged also that the government was acting in bad faith by calling Harris as a witness for the purpose of putting on "so called" impeaching evidence. The trial court properly overruled defendant's objections on these grounds. Agent Barborini then testified that Harris told him that the seller of the firearm who presented his driver's license and put his thumbprint on the pawn ticket gave him the rifle, that he was alone, and that Harris did not say anything about another person.

■■ Although Harris' testimony did not affirmatively support the defense's theory, his statement that he did not recall whether a third person was involved in the sale was nevertheless subject to impeachment. The law is clear that if a witness has denied making a statement *or has failed to remem-*

2. The elements of the offense under 18 U.S.C. § 922(g)(1) require the government to prove beyond a reasonable doubt that the defendant was: (1) in knowing possession of a firearm, (2) a convicted felon, and (3) that the firearm affected interstate commerce. Billue does not challenge the government's proof that he was a convicted felon, nor does he contest the government's adequacy of proof that the firearm involved affected interstate commerce.

*ber it,* the making of the statement may be proved by another witness. *Williamson v. United States,* 310 F.2d 192, 199 (9th Cir. 1962) ("The answer of a witness that he does not remember having made a prior statement is as adequate a foundation [for impeachment] as a flat denial"); *United States v. Sisto,* 534 F.2d 616, 622 (5th Cir.1976); *United States v. Cline,* 570 F.2d 731, 735 (8th Cir.1978); J. Weinstein & M. Berger, *Weinstein's Evidence,* ¶ 613[04], at 613–22 (1992).

Billue argues that in this case the reason for calling Harris as a witness was to use him as a "straw man" to present the jury with otherwise inadmissible hearsay evidence. Billue correctly observes that the government would have acted in bad faith if it had offered the testimony of Harris knowing it to be useless, and thereafter eliciting the testimony for impeachment in the form of an inconsistent statement. *United States v. Hogan,* 763 F.2d 697 (5th Cir.1985); *United States v. Webster,* 734 F.2d 1191 (7th Cir. 1984). We find, however, that Harris' testimony does not fall within the ambit of the bad faith rule.

*United States v. De Lillo,* 620 F.2d 939 (2d Cir.1980), *cert. denied,* 449 U.S. 835, 101 S.Ct. 107, 108, 66 L.Ed.2d 41 (1980), upon which Billue relies, places Harris' testimony outside the scope of the bad faith rule. In *De Lillo,* the court stated:

> Beyond doubt, Monahan was not called to the stand by the government as a subterfuge with the primary aim of getting to the jury a statement impeaching him. Monahan's corroborating testimony was essential in many areas of the government's case. Once there, the government had the right to question him, and to attempt to impeach him, about those aspects of his testimony which conflicted with Gorman's account of the same events.

*Id.* at 946.

Like Monahan's testimony in *De Lillo,* Harris' testimony in the instant case was important for the government in relating how Billue presented his ID card, signed the document, and placed his thumbprint on the pawn ticket. In addition, Harris' testimony demonstrated that he knew the law required that he not deliberately falsify information on the pawn ticket or in the A & D book. Moreover, the government did not elicit information on direct examination that would have provided a basis for impeachment. It was only after the following questions by the defense and answers of Harris on cross-examination that the government sought to impeach Harris.

> "You don't recall who you actually gave the money to for the sale, correct?"
>
> Answer: "No, I don't."
>
> "It could have been to another individual who brought the rifle into the store, correct?"
>
> Answer: "It could have, or I could have just sat it on the counter."

In sum, the trial court properly admitted impeachment evidence from Agent Barborini to contradict Harris' testimony that he could not recall what he had said to Barborini.

*The Plain Error Defense*

Having concluded that the testimony of government Agent Barborini was admissible as evidence of a prior inconsistent statement by Harris, we turn to a more difficult question. We must now determine whether reversal is warranted based on the trial court's failure to give an instruction that evidence by Agent Barborini of a prior inconsistent statement could only be considered for the purpose of impeachment, but not to establish the stated fact that Billue acted alone in selling the firearm.

We note as an initial matter that had Billue requested a cautionary instruction that the jury could only consider Agent Barborini's testimony as impeachment and not substantive evidence, it would have been error for the trial court to refuse such an instruction. *See United States v. Sisto,* 534 F.2d 616, 623 (5th Cir.1976); *see also Slade v. United States,* 267 F.2d 834, 839 (5th Cir. 1959). Agent Barborini's testimony concerning what Harris told him was clearly hearsay, and could not properly be considered by the jury as direct evidence of what transpired when the firearm was purchased.

In the instant case, the defense failed to request a limiting instruction—in part presumably because the defense insisted that

Agent Barborini's testimony did not impeach Harris. Therefore, the issue we must decide is whether, in the absence of a limiting instruction request, this case must be reversed as plain error.

The general rule applicable in this circuit was stated in *United States v. Garcia,* 530 F.2d 650, 656 (5th Cir.1976): "Plain error appears only when the impeaching testimony is extremely damaging, the need for the instruction is obvious, and the failure to give it is so prejudicial as to affect the substantial rights of the accused."

Observing that the rule seems to define the duty to give the limiting charge as being *upon request,*[3] the *Garcia* court noted and quoted Rule 105 of the Federal Rules of Evidence:

> When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, *upon request,* shall restrict the evidence to its proper scope and instruct the jury accordingly.

*Id.* at 656 (emphasis added).

*Garcia* went on to say, however, that in certain circumstances the failure to give a limiting instruction, even though one was not requested, amounts to plain error requiring reversal. But the court also quoted with approval from *United States v. James,* 505 F.2d 898, 901 (5th Cir.1975), *cert. denied,* 421 U.S. 1000, 95 S.Ct. 2397, 44 L.Ed.2d 667 (1975):

> While we have noted the desirability of instructing juries as to the limited purposes for which impeachment evidence is admitted, we have not held that the failure

to give an instruction *sua sponte* automatically results in reversible error. We decline to do so now.... Under the facts and circumstances of this case, the lack of an instruction was not so critical as to affect the substantial rights of the appellant.

*Garcia,* 530 F.2d at 656 (citations omitted).

■ The *Garcia* rule thus requires us to decide whether the impeachment of Harris by Agent Barborini was "extremely damaging" and whether the failure to give the limiting instruction was so prejudicial as to affect Billue's "substantial rights."[4] Under these circumstances, reversal is dictated by the plain error standard "only if we are in doubt as to what the jury's verdict would have been had the proper instruction been given." *United States v. Sisto,* 534 F.2d 616, 624 (5th Cir.1976).

In *Sisto,* the court noted that the only direct evidence of the defendant's knowledge that a liquor bottle contained liquified cocaine came from the impeaching testimony of a government agent. The *Sisto* court stated that it reached its conclusion that the agent's testimony played a major factor in the jury's deliberation "not solely on the basis of the court's failure to caution, but on that omission taken with the affirmative effects of the prosecution's closing argument and the trial court's actual instructions."[5] *Sisto,* 534 F.2d at 625. The court concluded:

> We add one final caveat. Our decision today is not to be taken as an indication that plain errors henceforth will be easily found in these situations. Rather, we reaffirm the holdings and import of *Garcia, James,* and [*United States v.*] *Clark* [480

---

3. In *Garcia,* as in the case *sub judice,* there was no request for a limiting instruction.

4. We recognize that even if a limiting instruction had been given, the impeachment testimony of Agent Barborini was damaging to the defense. If Harris' testimony was impeached, it reflected on the credibility of Loretta Wilson, who was also impeached by her prior conviction. If the jury found their testimony not credible, no evidence supported the implausible theory of the defense.

5. At Sisto's trial, the prosecution had asked the jury repeatedly to consider the evidence in the

agent's impeaching statement as proving the case for the government. When the defense objected to the prosecution's closing argument as referring to statements not in evidence, the trial court instructed the jury to consider the testimony of the impeaching witness in the same way as other testimony in the case. On appeal, the Fifth Circuit found that the remarks of the prosecution and those of the trial court must have been to encourage the jury to treat the agent's testimony as direct evidence of Sisto's knowledge: "Were we convinced that the jury rejected Sisto's defense on some basis other than [the agent's] testimony, we could affirm." 534 F.2d at 616.

F.2d 1249 (5th Cir.1973) ], *supra.* We will find plain error in a trial court's failure *sua sponte* to give a *Slade* instruction only when the impeaching evidence is extremely damaging, the need for the instruction is obvious, and the remainder of the Government's case is not strong. These factors are present in this case, and were exacerbated by the prosecution's closing arguments and the trial court's actual instructions, which together tended to emphasize the impeaching testimony as direct evidence. We expect, however, that future cases in which these factors coalesce will be rare, and we reemphasize the responsibility of trial counsel to assist the trial court in avoiding error, and the implicit sanction for failure in that responsibility which is reflected in the "plain error" standards.

*Id.* at 626.

■ In the trial of Billue, the defense does not claim that the prosecuting attorney made any argument that the impeaching statement could be considered as affirmative proof of the government's case. A careful reading of the trial judge's charge to the jury discloses no such comments as were found tilting in favor of the determination of plain error in *Sisto.* Finally, in determining whether the plain error result should be imposed, the court is required to consider all the evidence in the case to decide if we are in doubt as to whether the jury verdict would have been the same with a limiting instruction.

Defendant, a convicted felon, entered Northwood Pawn Shop and presented his ID card to Harris. Harris examined his picture on his driver's license to be sure that defendant was Edward Bernard Billue. Defendant placed his thumbprint on the pawn ticket which was for the recognizable purpose of identifying the seller. The defendant then signed the document above the printed statement verifying that he was the owner of the gun and that he was entitled to sell it.

Harris testified that he couldn't recall whether there was a third man involved in the sale, and his credibility at not being able to recall was itself impeached. The only evidence to the contrary was the improbable story of Loretta Wilson, who, when first contacted by the government agent, did not recall the stranger who "badgered and badgered" defendant and later recalled such individual only after being questioned by defendant's investigator. Finally, Wilson was herself impeached by first denying a prior conviction of knowingly and willfully giving false information to a police officer, and then acknowledging it when the government presented the record of her conviction. On these facts, we conclude that giving the limiting instruction beyond a reasonable doubt would not have changed the jury verdict. Therefore, the "plain error" standard is not properly applicable.

*Entrapment By Estoppel Defense*

Because he argues that licensed firearm dealers are federal officials, and since he signed the pawn ticket and used his ID in the sale of the firearm only after allegedly being advised that it was all right to do so by an employee of a licensed firearms dealer, Billue contends that the district court erroneously refused to instruct the jury on the defense of entrapment by estoppel.

■ The defense of entrapment by estoppel may apply under certain circumstances when a government official erroneously tells a defendant that conduct is legal and the defendant, believing the official, acts on the advice. *United States v. Hedges,* 912 F.2d 1397, 1405 (11th Cir.1990). In determining whether a factual basis for the instruction exists, the evidence must be reviewed in the light most favorable to the defendant. *Id.* at 1405–06. The trial court has authority to refuse to instruct the jury on a defense where the evidence used to support it, if believed, fails to establish a legally cognizable defense. *United States v. Rosenthal,* 793 F.2d 1214, 1236 (11th Cir.1986), *modified, reh'g denied,* 801 F.2d 378 (11th Cir.1986), *cert. denied,* 480 U.S. 919, 107 S.Ct. 1377, 94 L.Ed.2d 692 (1987). We find that in this case, Billue has furnished neither a legal nor factual basis for an entrapment by estoppel instruction.

■ Although the Eleventh Circuit has not considered whether a licensed firearms dealer is a federal official for purpose of the

entrapment defense, the question has received divergent responses from two other circuits. In *United States v. Tallmadge*, 829 F.2d 767 (9th Cir.1987), the Ninth Circuit held that a licensed firearms dealer is such a federal agent in connection with the gathering and dispensing of information on the purchase of firearms as gives rise to an entrapment by estoppel defense.[6] However, the Eighth Circuit, declining to follow *Tallmadge*, held that "licensed firearms dealers are private individuals, not federal employees, much less federal officials." *United States v. Austin*, 915 F.2d 363, 366–67 (8th Cir.1990), *cert. denied*, — U.S. —, 111 S.Ct. 1626, 113 L.Ed.2d 722 (1991). We agree with the Eighth Circuit that a federal license to sell firearms does not transform private licensees into government officials, thereby creating a potential entrapment by estoppel defense.

Billue's estoppel argument relies on *United States v. Hedges, supra.* In *Hedges*, this court cited *Tallmadge* for the proposition that under certain circumstances, a defendant could rely on what a government official said to him in order to assert the entrapment by estoppel defense. The court in *Hedges*, however, was not considering whether a firearms dealer is a government official. Because we reject *Tallmadge*'s pronouncement that a licensed firearm dealer is a government official, Billue's dependence on *Hedges* is misguided.

Billue's reliance on the defense of entrapment by estoppel is unavailing for at least two other reasons. First, Loretta Wilson was not a licensed firearms dealer. Instead, Wilson's mother, the owner of Northwood Pawn Shop, was the licensee. Second, if Billue's estoppel defense were permitted, it would allow convicted felons to withhold material facts from a federally licensed firearms dealer, elicit an erroneous response based on such non-disclosure, and then plead entrapment. The district court properly refused to give a charge based on entrapment by estoppel.

**CONCLUSION**

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**6.** *Tallmadge*'s approach to the entrapment by estoppel defense was questioned by a different Ninth Circuit panel in *United States v. Clegg*, 846 F.2d 1221, 1224 (9th Cir.1988): "Whatever our disagreements may be with the court's ruling in *Tallmadge, see, e.g., id.* at 775–82 (Kozinski, J., dissenting), it is the law of the Circuit and we are bound to follow it."