STATE OF NORTH CAROLINA v. BETTY BARR

No. COA11-619

(Filed 7 February 2012)

**1. Crimes, Other—illegally accessing a government computer—aiding and abetting in the illegal access of a government computer—sufficient evidence**

The trial court did not err by denying defendant's motion to dismiss the charges of illegally accessing and aiding and abetting in the access of a government computer for insufficient evidence. The State presented sufficient evidence that defendant accessed a government computer to obtain services by fraud and that she acted willfully.

**2. Crimes, Other—illegally accessing a government computer—aiding and abetting in the illegal access of a government computer—same purpose of transaction—indictment defective**

The trial court erred in an illegally accessing and aiding and abetting in the access of a government computer case by entering convictions for violations of both N.C.G.S. § 14-454.1(a)(2) and (b) for the same "purpose" and transaction. N.C.G.S. § 14-454.1(b) requires that the purpose for accessing a government computer

must be one "other than those set forth" in subsection (a). The second count failed to state a purpose "other than those set forth" in subsection (a), and the portion of the indictment charging a violation of N.C.G.S. § 14-454.1(b) was, therefore, fatally defective.

**3. Jury—instructions—entrapment by estoppel—governmental authority—defendant not government official**

The trial court did not err in an illegally accessing and aiding and abetting in the access of a government computer case by denying defendant's request for a jury instruction on the defense of entrapment by estoppel or governmental authority. Defendant was not a government official for purposes of the application of the entrapment by estoppel defense.

**4. Jury—instructions—illegally accessing a government computer—aiding and abetting in the illegal access of a government computer—generic—no error**

The trial court did not commit plain error in an illegally accessing and aiding and abetting in the access of a government computer case by giving a generic instruction to the jury for the categories of the charges. Defendant failed to explain in her brief how any alleged error by the trial court in categorizing the jury instructions prejudiced her trial.

Appeal by defendant from judgment entered 22 December 2010 by Judge Kevin M. Bridges in Davidson County Superior Court. Heard in the Court of Appeals 10 November 2011.

*Ellis & Winters LLP, by Paul K. Sun, Jr., and Jeremy M. Falcone and Clifford, Clendenin & O'Hale, by Locke T. Clifford, for Defendant.*

*Attorney General Roy Cooper, Assistant Attorney General Robert K. Smith, for the State.*

THIGPEN, Judge.

Betty Barr ("Defendant") was charged and convicted of illegally accessing and aiding and abetting in the access of a government computer in violation of N.C. Gen. Stat. § 14-454.1(a)(2) and (b). On appeal, we must determine whether the trial court erred in denying Defendant's motion to dismiss, whether an indictment was fatally defective, and whether the trial court erred in its instructions to the jury. We conclude there was no prejudicial error in the judgments

convicting Defendant in Case Nos. 10 CRS 1557, 10 CRS 1558, and 10 CRS 1559. However, the portion of the judgment convicting Defendant in Case No. 10 CRS 1560 for a violation of N.C. Gen. Stat. § 14-454.1(b) must be arrested.

## I: Factual and Procedural History

The evidence of record tends to show the following: Defendant was the owner and operator of Lexington License Plate Agency No. 29 ("Lexington Agency"). When a car dealer completes a vehicle sale, he must transfer title of the vehicle to the new owner, which entails delivering relevant paperwork, such as the bill of sale and application for new title, to a license plate agency such as the Lexington Agency. Defendant underwent training at the North Carolina Department of Motor Vehicles ("DMV") in order to operate the Lexington Agency, and Defendant applied for and was granted a contract from DMV as the operator of the Lexington Agency. Defendant was also a licensed RAC-F Title Clerk ("title clerk"). When a car dealer requests that a license plate agency transfer title of a vehicle, a title clerk checks the paperwork for accuracy and accesses a computer system called State Title and Registration System ("STARS") by entering the title clerk's unique number called an RACF number, which is issued to the title clerk by DMV; the title clerk also enters a private entry code number that the title clerk creates as her password. STARS allows the title clerk to process the transfer of title, but only after the title clerk enters the relevant information for the transfer into STARS, including the car dealer's identification number. All North Carolina vehicles are titled and registered through STARS.

Defendant worked with four other title clerks at the Lexington Agency, Bettina Granados ("Granados"), Arlene Cornatzer ("Cornatzer"), Mary Byerly ("Byerly"), and Miranda Stokes ("Stokes"). On average, the Lexington Agency handled 700 to 800 vehicle title transfers and 200 to 300 telephone calls per day.

The Lexington Agency had a policy for occasions when title transfer issues or questions arose. First, the title clerk would consult the DMV manual. If the title clerk did not find the answer in the DMV manual, the title clerk would next ask other title clerks for guidance. If other title clerks had not encountered that particular issue before, the title clerk would then call a DMV help desk in Raleigh, North Carolina. The help desk, staffed with DMV personnel, would provide an answer and instruct title clerks on the proper resolution to the issue.

Randall K. Lanier ("Lanier") was a car dealer who owned Lanier Motor Company. For more than thirty-five years, Lanier had bought salvaged vehicles, repaired them, and sold them at Lanier Motor Company. In 2007, due to "tremendous financial losses" affecting Lanier's credit, Lanier's bonding company refused to renew the company's bonds for 2008-2009. On 12 August 2008, Lanier's license, Lic. #7736, was terminated. Lanier, however, continued to sell vehicles without a license.

It is undisputed that the Lexington Agency transferred title for sixteen of Lanier Motor Company's vehicle sales while Lanier Motor Company was unlicensed. However, there is conflicting evidence regarding the details of the transfers.

According to several title clerks and Defendant, the following transpired: On 25 September 2008, Lanier went to the Lexington Agency to transfer title for two recent vehicle sales. Defendant was not present. Lanier gave the relevant paperwork to the title clerk, Stokes. Stokes entered Lanier's dealer identification number into STARS, and the computer responded, "invalid dealer number." Stokes asked Granados how to resolve the issue. Granados typed "OS" for the dealer number and told Stokes to continue. "OS" was an abbreviation for out-of-state. When Stokes asked Granados why she had entered "OS[,]" Granados explained that Lanier "was in the process of combining two lots or moving a lot to make his dealer number present. It was in the stage of being perfected by Raleigh, and that's what we were told to do." Stokes understood that Granados had called the DMV help desk to confirm that entering "OS" was the proper procedure for Lanier Motor Company. Entering "OS" for Lanier's transfers of title became the recognized procedure for the office. Several days after 25 September 2008, Lanier again came to the Lexington Agency to transfer title for another vehicle. Defendant entered Lanier's dealer number into STARS, and the system indicated Lanier was an inactive dealer, which means the car dealer has not renewed his dealer license. Granados again told Defendant, "I called [the help desk] and they told me that you could enter those . . . because he's just in the process of getting his bonds together." Granados explained that Defendant should enter "OS[.]"

However, according to Granados, she never called the DMV help desk, and, in fact, Defendant had instructed her to enter "OS" for Lanier Motor Company's transfers.

Defendant was directly involved in only three transfers. In total, Defendant earned $59 in fees for the sixteen title transfers.

On 5 April 2010, Defendant was indicted on three counts of accessing a government computer and two counts of aiding and abetting accessing a government computer pursuant to N.C. Gen. Stat. § 14-454.1(a) and (b). The indictments charging violations of N.C. Gen. Stat. § 14-454.1(a) were based on title transfers personally made by Defendant on 30 September 2008, 23 October 2008, and 3 November 2008. The indictment charging violations of N.C. Gen. Stat. § 14-454.1(a) and (b) was based on a title transfer by Mary Byerly on 30 January 2009, which Defendant allegedly aided and abetted. The matter came on for trial at the 13 December 2010 session of Davidson County Superior Court. Defendant moved to dismiss the charges at the close of the State's evidence and renewed the motion at the close of all evidence. The jury entered verdicts finding Defendant guilty of three counts of unlawfully accessing a government computer for a fraudulent purpose, and two counts of aiding and abetting the unlawful access of a government computer. The trial court entered a consolidated judgment sentencing Defendant to thirteen to sixteen months incarceration; however, the trial court suspended the sentence and placed Defendant on supervised probation for eighteen months. Defendant was also fined $59.20. From these judgments, Defendant appeals.

## II: Motion to Dismiss

[1] Defendant first argues the trial court erred by denying her motion to dismiss because there was no substantial evidence that (1) she accessed a government computer to obtain services by fraud; (2) or that she acted willfully. We disagree and address each argument in turn.

When reviewing a challenge to the denial of a defendant's motion to dismiss a charge on the basis of insufficiency of the evidence, this Court determines "whether the State presented substantial evidence in support of each element of the charged offense." *State v. Chapman*, 359 N.C. 328, 374, 611 S.E.2d 794, 827 (2005) (quotation omitted). "Substantial evidence is relevant evidence that a reasonable person might accept as adequate, or would consider necessary to support a particular conclusion." *State v. Abshire*, 363 N.C. 322, 328, 677 S.E.2d 444, 449 (2009) (quotation omitted). "In this determination, all evidence is considered in the light most favorable to the State, and the State receives the benefit of every reasonable inference supported by that evidence." *Id.* (quotation omitted). Additionally, a "substantial evidence inquiry examines the sufficiency of the evidence presented but not its weight," which remains a matter for the

jury. *State v. McNeil,* 359 N.C. 800, 804, 617 S.E.2d 271, 274 (2005) (quotation omitted). Thus, "[i]f there is substantial evidence— whether direct, circumstantial, or both—to support a finding that the offense charged has been committed and that the defendant committed it, the case is for the jury and the motion to dismiss should be denied." *Id.* (quotation omitted).

N.C. Gen. Stat. § 14-454.1(a)(2) provides the following: "It is unlawful to willfully, directly or indirectly,. access or cause to be accessed any government computer for the purpose of . . . [o]btaining property or services by means of false or fraudulent pretenses, representations, or promises." N.C. Gen. Stat. § 14-454.1(b) provides that "[a]ny person who willfully and without authorization, directly or indirectly, accesses or causes to be accessed any government computer for any purpose other than those set forth in subsection (a) of this section is guilty of a Class H felony."

### A: Obtaining Services

In Defendant's first argument on appeal, she contends the State did not present substantial evidence that she accessed a government computer "for the purpose of obtaining services[.]" We disagree.

N.C. Gen. Stat. § 14-454.1(a)(2) provides, in part, that "[i]t is unlawful to . . . access or cause to be accessed any government computer for the purpose of . . . *[o]btaining property or services*[.]" (emphasis added). The indictments charging Defendant with violations of N.C. Gen. Stat. § 14-454.1(a)(2) stated that Defendant "did access a government computer . . . for the purpose of *obtaining services.*" (emphasis added).

N.C. Gen. Stat. § 14-453(4a) defines "[c]omputer services" as "computer time or services, including data processing services, Internet services, electronic mail services, electronic message services, or information or data stored in connection with any of these services." Moreover, N.C. Gen. Stat. § 14-453(9) defines "[s]ervices" as including "computer time, data processing and storage functions."

The following evidence of record supports that Defendant accessed a government computer for the purpose of "obtaining . . . services" pursuant to N.C. Gen. Stat. § 14-454.1(a)(2). Assistant Supervisor Danny Barlow ("Supervisor Barlow") from the DMV testified that during the course of his investigation, he discovered that transfers were made by the Lexington Agency using the "OS" code for Lanier Motor Company. Defendant admitted on cross-examination

that she personally accessed STARS and made the "transfer on September 30th, 2008, for Lanier Motor Company[.]" Defendant also admitted she accessed STARS and personally made the transfers for Lanier Motor Company on 23 October 2008 and 3 November 2008. Likewise, Defendant admitted that on 30 January 2009, Defendant told "Mary Byerly . . . to run a Lanier Motor Company title through as out of state dealer[.]" For the foregoing transfers, Defendant admits that she was "paid $59.20[.]"

We believe the foregoing evidence is substantial evidence to support the element of "[o]btaining . . . services" pursuant to N.C. Gen. Stat. § 14-454.1(a)(2), as defined by N.C. Gen. Stat. § 14-453(4a) and N.C. Gen. Stat. § 14-453(9). Defendant had "computer time" on STARS; Defendant also accessed "information or data stored in connection with" STARS. We therefore conclude the trial court did not err by denying Defendant's motion to dismiss on the basis that there was not substantial evidence that Defendant "[o]btain[ed] . . . services[.]"

### B: Willfulness

In Defendant's second argument on appeal, she contends the trial court erred by denying her motion to dismiss because the State did not present substantial evidence that Defendant acted willfully as required by N.C. Gen. Stat. § 14-454.1(a)(2). We disagree.

N.C. Gen. Stat. § 14-454.1(a)(2) provides, in part, that "[i]t is unlawful to *willfully*, directly or indirectly, access or cause to be accessed any government computer[.]" (emphasis added).

"Ordinarily, [w]ilful as used in criminal statutes means the wrongful doing of an act without justification or excuse, or the commission of an act purposely and deliberately in violation of law." *State v. Williams*, 284 N.C. 67, 72, 199 S.E.2d 409, 412 (1973) (quotation omitted).

> The word wilful, used in a statute creating a criminal offense, means something more than an intention to do a thing. It implies the doing the act purposely and deliberately, indicating a purpose to do it without authority—careless whether he has the right or not—in violation of law, and it is this which makes the criminal intent without which one cannot be brought within the meaning of a criminal statute.

*In re Adoption of Hoose*, 243 N.C. 589, 594, 91 S.E.2d 555, 558 (1956) (quotation omitted).

**STATE v. BARR**

[218 N.C. App. 329 (2012)]

Defendant argues on appeal that there is no evidence of willfulness because evidence showed that Defendant believed the DMV help desk had instructed the Lexington Agency to enter Lanier Motor Company transfers as "OS." Although there is evidence to support the foregoing assertions by Defendant—in particular, the testimony of Stokes and Defendant—there is also evidence to the contrary— Granados' testimony. When asked, "did you ever call the Department of Motor Vehicle Division in Raleigh to receive any information or assistance regarding that particular issue?" Granados responded, "No, sir." Granados also gave the following testimony at trial:

Q.  Bringing your attention back to September or October of 2008 regarding some of those dealer packets that you picked up that belonged to Lanier Motor Company, can you tell the jury whether or not anything unusual happened when you attempted to process them?

A.  I went to open up the dealer folder under Lanier Motors and when I went in to start processing a piece of work I already entered the customer[']s identification. I entered the title number and went over to mileage. I done (sic) the mileage. When it came to the screen to enter what was on the bill of sale, it said "inactive dealer".

Q.  What did that mean to you as an individual that worked as a title clerk for a license plate agency?

A.  That means he didn't renew his dealer's license.

Q.  As an employee with the experience that you had, were you at that point in time allowed to transfer that title through the STAR System?

A.  No, sir.

Q.  As long as the dealer number was in the STAR computer and it showed inactive, would the computer allow that transfer?

A.  No, sir.

Q.  At that point in time what did you do?

A.  I brought it to Betty Barr's attention, it was not active.

Q.  And how did you do that? Tell the jury what contact or interaction you had with Betty Barr at that time.

STATE v. BARR

[218 N.C. App. 329 (2012)]

A. I took the pieces of work and I went and told her that Mr. Lanier Motors['] dealer number had been expired, it would not let me process it. And at that time she said she would handle it, contacting him.

Q. What did Betty Barr say?

A. She would handle contacting him.

. . .

A. . . . About two or three days later [Lanier] came back into the office. .

. . .

Q. At that point in time did you see any interaction between Mr. Randall Lanier and Betty Barr?

A. They went to the back and spoke, sir. They didn't speak out front.

. . .

Q. Can you indicate to the ladies and gentlemen of the jury how long a time that you observed or found that Mr. Lanier, Randall Lanier, and the defendant, Betty Barr, remained in that back area?

A. Around 10 to 15 minutes.

. . .

Q. What, if anything, did you see Mr. Randall Lanier do when he returned several days after he had received those title packets, if anything?

A. Well, at the time when he came back with them he didn't enter the office. They had had a conversation outside.

. . .

Q. . . . Now, from the time that you first learned that Lanier Motor Company dealer number was invalid, did you ever contact any governmental official at the Division of Motor Vehicles, Department of Transportation orally that would relate to license plate agency operation?

A. No, sir.

. . .

STATE v. BARR

[218 N.C. App. 329 (2012)]

Q.　At any time during your employment and after you learned of the dealer number invalidation, did you ever tell Betty—I'm sorry—Mary Byerly that you had called a governmental agency orally?

A.　No, sir.

. . .

Q.　Are you familiar with the key code on the STAR System, O S, do you know what that is?

A.　Yes. It is out of state.

Q.　Based upon your training and the protocols that you were to follow as a title clerk, when would you use the key code O S?

A.　When it was an out of state dealer.

Q.　Did you ever key into the computer that Miranda Stokes used in any of the transfers for Lanier Motor Company out of state? Did you ever key that in on her computer at any time when she was addressing a Lanier Motor Company transaction?

A.　No, sir.

. . .

Q.　Did you ever tell Miss Cornatzer to use the key code out of state dealer in any transfers that she did for Lanier Motor Company after you learned that that company had an invalid dealer number?

A.　No, sir.

Q.　Ma'am, I want to bring your attention to the date January 6, 2009. Did you have occasion to again process titles for Lanier Motor Company on that date?

A.　Yes, sir.

Q.　Could you indicate to the ladies and gentlemen of the jury how that came about and what, if anything, unusual took place?

A.　I picked up the dealer packet out of the back room again.

. . .

Q.　What did you do with that Lanier Motor packet on January 6th, 2009, what did you do with it?

STATE v. BARR

[218 N.C. App. 329 (2012)]

A. I brought it to my work station.

Q. What took place at that location?

A. I opened up the dealer packet and proceeded to see if I could do the work and it still said the dealer was inactive.

Q. Was the defendant Betty Barr present in the office on that date and time?

A. Yes, sir.

Q. What conversation, if any, did you have with Betty Barr regarding the finding that you just learned on your computer as it relates to the Lanier Motor Company transfer?

A. I told her that the dealer number was inactive. And she said to go ahead and process it as an O S and that when Raleigh received it they would see that he had applied for his dealer number or had his dealer stuff in trying to get it passed and they would go ahead and send it through.

Q. Based upon your training and education and experience as a title clerk for the license plate agency, was that a proper protocol that you have learned or experienced as a clerk?

A. No, sir.

Q. How many transfers did you make for Lanier Motor Company on January 6, 2009, if any?

A. I recall about three pieces.

. . .

Q Indicate to the ladies and gentlemen of the jury how you did those three transfers, what key code did you utilize in transferring each of those three motor vehicle titles?

A. O S for out of state dealer.

Q. Why did you use the O S, out of state dealer key code, to make those transfers on January 6, 2009?

A. My supervisor, Betty Barr, told me to process it.

Q. Did any person ever tell you from the Department of Motor Vehicles Division of Transportation that that was a proper method to transfer a dealer's motor vehicle that was invalid?

A. No, sir.

. . .

Q   In regard to Mr. Randall Lanier, was that different or the same as she dealt with other dealers?

. . .

[A]:   Yes, sir, it was different.

. . .

Q.   How was it different?

A.   He was running for a political thing there and they carried on a conversation about that.

Q.   What do you mean when you say him, who are you referring to?

A.   Mr. Lanier.

Q.   What political thing was he running for if you are aware of it?

A.   I don't know. I just heard him talking that he was running for a thing and her mother is over the Board of Election.

"It is elementary that the jury may believe all, none, or only part of a witness' testimony[.]" *State v. Miller*, 26 N.C. App. 440, 443, 216 S.E.2d 160, 162, *aff'd*, 289 N.C. 1, 220 S.E.2d 572 (1975). Therefore, it was within the province of the jury to disbelieve the testimony of Defendant and several title clerks, but believe Granados' testimony. Taking Granados' testimony in the light most favorable to the State, we believe there was substantial evidence of Defendant's willfulness to violate N.C. Gen. Stat. § 14-454.1(a)(2). Granados' testimony is substantial evidence that Defendant "[did] the act purposely and deliberately, indicating a purpose to do it without authority—careless whether he has the right or not—in violation of law[.]" *In re Adoption of Hoose*, 243 N.C. at 594, 91 S.E.2d at 558. Therefore, we conclude the trial court did not err by denying Defendant's motion to dismiss for lack of substantial evidence of willfulness.

### III:  Indictment

[2]  In Defendant's next argument, she contends she cannot be convicted of a violation of both N.C. Gen. Stat. § 14-454.1(a)(2) and (b) for the same "purpose" and transaction. We agree.

N.C. Gen. Stat. § 14-454.1(a)(2) provides that "[i]t is unlawful to willfully, directly or indirectly, access or cause to be accessed any government computer for the *purpose* of: . . . Obtaining property or services by means of false or fraudulent pretenses, representations, or promises." *Id.* (emphasis added). N.C. Gen. Stat. § 14-454.1(b) provides that "[a]ny person who willfully and without authorization, directly or indirectly, accesses or causes to be accessed any government computer *for any purpose other than those set forth in subsection (a)* of this section is guilty of a Class H felony." *Id.* (emphasis added).

The indictment alleging violations on 30 January 2009 sets forth two counts, one for a violation of N.C. Gen. Stat. § 14-454.1(a), alleging Defendant aided and abetted the access of a government computer "for the purpose of obtaining services . . . . by processing the transfer of a motor vehicle title[,]" and the second for a violation of N.C. Gen. Stat. § 14-454.1(b), alleging Defendant aided and abetted the access of a government computer for the purpose of "improperly processing the transfer of a motor vehicle title[.]"

The plain language of N.C. Gen. Stat. § 14-454.1(b) requires that the purpose for accessing a government computer must be one "other than those set forth" in subsection (a). *Id.* As both the count charging Defendant with a violation of N.C. Gen. Stat. § 14-454.1(a) and the count charging Defendant with a violation of N.C. Gen. Stat. § 14-454.1(b) allege that Defendant aided and abetted the access of a government computer for the purpose of "processing the transfer of a motor vehicle title[,]" the second count fails to state a purpose "other than those set forth" in subsection (a), and the portion of the indictment charging a violation of N.C. Gen. Stat. § 14-454.1(b) is, therefore, fatally defective. *See State v. Patterson*, 194 N.C. App. 608, 612, 671 S.E.2d 357, 360, *disc. review denied*, 363 N.C. 587, 683 S.E.2d 383 (2009) ("A defect in an indictment is considered fatal if it wholly fails . . . to state some essential and necessary element of the offense of which the defendant is found guilty[;] [w]hen such a defect is present, it is well established that a motion in arrest of judgment may be made at any time in any court having jurisdiction over the matter, even if raised for the first time on appeal") (internal quotations omitted); *see also State v. Martin*, 47 N.C. App. 223, 231, 267 S.E.2d 35, 40, *disc. review denied*, 301 N.C. 238, 283 S.E.2d 134-35 (1980) (stating, "if the facts alleged in one indictment, if given in evidence, would sustain a conviction under a second indictment, or if the same evidence would support a conviction in each case, a defendant may not be tried, convicted and punished for both offenses[;] . . . [i]f, however, a

single act constitutes an offense against two statutes and each statute requires proof of an additional fact which the other does not, the offenses are not the same in law and in fact and a defendant may be convicted and punished for both") (internal citations omitted). We conclude the judgment convicting Defendant of aiding and abetting the access of a government computer in violation of N.C. Gen. Stat. § 14-454.1(b) must be arrested.[1]

### IV: Jury Instruction

**[3]** In Defendant's next argument, she contends the trial court erred by denying Defendant's written request for a jury instruction on the defense of governmental authority. We disagree.

The standard of review for appeals regarding jury instructions to which Defendant has properly lodged an objection at trial is the following:

> This Court reviews jury instructions . . . contextually and in its entirety. The charge will be held to be sufficient if it presents the law of the case in such manner as to leave no reasonable cause to believe the jury was misled or misinformed[.] . . . Under such a standard of review, it is not enough for the appealing party to show that error occurred in the jury instructions; rather, it must be demonstrated that such error was likely, in light of the entire charge, to mislead the jury.

*State v. Glynn,* 178 N.C. App. 689, 693, 632 S.E.2d 551, 554, *appeal dismissed, disc. review denied,* 360 N.C. 651, 637 S.E.2d 180-81 (2006) (quotation omitted). "If a party requests a jury instruction which is a correct statement of the law and which is supported by the evidence, the trial judge must give the instruction at least in substance." *State v. Ligon,* 332 N.C. 224, 242, 420 S.E.2d 136, 146 (1992) (citation omitted).

In this case, Defendant argues the law and evidence supported a jury instruction on entrapment by estoppel or governmental authority. Our United States Supreme Court has explained the doctrine of entrapment by estoppel as follows: "[C]itizens may not be punished

---

1. Because we arrest judgment on Defendant's conviction of aiding and abetting in violation of N.C. Gen. Stat. § 14-454.1(b), we need not address Defendant's remaining arguments pertaining to this conviction, specifically that (1) the indictment was fatally defective because it did not plead that Defendant was "without authorization" to access the government computer as required by N.C. Gen. Stat. § 14-454.1(b), and (2) that the trial court erred by denying Defendant's motion to dismiss the N.C. Gen. Stat. § 14-454.1(b) aiding and abetting charge, because the State did not present substantial evidence that Defendant acted "without authorization[.]"

for actions undertaken in good faith reliance upon authoritative assurance that punishment will not attach." *United States v. Laub*, 385 U.S. 475, 487, 87 S. Ct. 574, 581, 17 L. Ed. 2d 526, 534 (1967). A jury may not convict "a citizen for exercising a privilege which the State clearly had told him was available to him." *Raley v. Ohio*, 360 U.S. 423, 438, 79 S. Ct. 1257, 1266, 3 L. Ed. 2d 1344, 1355 (1959).

This Court recently addressed entrapment by estoppel in *State v. Pope*, ___ N.C. App. ___, ___, 713 S.E.2d 537, 541, *disc. review denied*, ___ N.C. ___, ___ S.E.2d ___ (2011), stating that "[a] criminal defend- ant may assert an entrapment-by-estoppel defense when the government affirmatively assures him that certain conduct is lawful, the defendant thereafter engages in the conduct in reasonable reliance on those assurances, and a criminal prosecution based upon the conduct ensues."[2] *Id.* (quotation omitted). "In order to assert an entrapment-by-estoppel defense, [the defendant] must do more than merely show that the government made vague or even contradictory statements. Rather, he must demonstrate that there was active misleading in the sense that the government actually told him that the proscribed conduct was permissible." *Id.* (quotation omitted).

In this case, Defendant requested the following jury instruction pertaining to entrapment by estoppel and governmental authority:

If you find by a preponderance of the evidence:

1.) That defendant Betty Barr, acting on her own or through her agents and employees who were authorized Division of Motor Vehicles RAC-F title clerks at her License Plate Agency, was told by Bettina Granados in her official capacity as an authorized RAC-F title clerk, that she, Ms. Granados, had called the DMV help desk, and had explained that a well-known longtime car dealer in Lexington, NC had a problem with trying to consolidate his two car lots under one bond, and

2.) That Ms. Granados said to Betty Barr and the other title clerks, that she received an authorization to process the Lanier Motor Company vehicle title transfers as though the Lanier Motor Company was an out of state dealer, and

---

2. We note this opinion was handed down on 12 January 2011, which was after the trial in this case. The trial court correctly applied the law existing at the time of trial, which consisted only of federal opinions. This notwithstanding, *Pope* is not inconsistent with the law applied by the trial court in determining whether to give the requested jury instruction in this case.

3.)  That Ms. Granados had the real or apparent authority to make such a representation, and

4.)  That Betty Barr, in reasonable reliance upon that representation by Ms. Granados entered and allowed her clerks to enter "OS" for out of state dealer in the 16 Lanier Motor Company vehicle title transfers in question,

Then you should return a verdict of "not guilty" as to each of the counts in the indictment.

The pertinent question on appeal is whether Granados, "an authorized RAC-F title clerk[,]" was a government official for purposes of entrapment by estoppel. Among the numerous examples of government officials in the context of entrapment by estoppel in the law of this State and federal courts are "officials" of the "Town of Coats[,]" *Pope*, ___ N.C. App. ___, ___, 713 S.E.2d 537, 542, the Un-American Activities Commission, which told witnesses they had a right to rely on the privilege against self-incrimination, *Ohio*, 360 U.S. 423, 79 S. Ct. 1257, 3 L. Ed. 2d 1344, and a Police Chief and Sheriff, *Cox v. Louisiana*, 379 U.S. 559, 85 S. Ct. 476, 13 L. Ed. 2d 487 (1965).

In Defendant's request for the jury instruction, she relied on *United States v. Tallmadge*, 829 F.2d 767, 774 (9th Cir. 1987), in which the majority opinion held the government official was "a federally licensed gun dealer[,]" who the Court described as "a licensee of the federal government[.]" However, we find the dissenting opinion in *Tallmadge* to be more persuasive. The dissent in *Tallmadge* disagreed with the majority's conclusion that the federally licensed gun dealer was a governmental official, stating, "I believe the panel errs in allowing *Tallmadge* to rely on statements purportedly made by the gun dealer, who is not even a federal employee, much less an official authorized to bind the government." *Id.* at 776 (Kozinski, J., dissenting).

In this case, Defendant contends that Granados, a licensed and "authorized RAC-F title clerk[,]" was a government official for purposes of the entrapment by estoppel defense and jury instruction. Granados was an employee of the Lexington Agency, not the State of North Carolina, and the Lexington Agency was a private contractor. We agree with the federal line of cases aligned with the *Tallmadge* dissenting opinion, which reason that "a federal license . . . does not transform private licensees into government officials[,]" *United States v. Billue*, 994 F.2d 1562, 1569 (11th Cir. 1993), and "[because] [w]e do not have before us the situation where a government official, such as a judge, a prosecuting attorney, an ATF official, or a proba-

tion officer, [made a representation][,] . . . we cannot agree that . . . [a] license . . . is sufficient to transform [the licensee] into government officials[.]" *United States v. Austin*, 915 F.2d 363, 367 (8th Cir. 1990).[3] We do not believe that Granados' capacity as a licensed RAC-F title clerk was sufficient to establish that Granados was a government official. We therefore conclude that Granados was not a government official for purposes of the application of the entrapment by estoppel defense, and resultantly, the trial court did not err by concluding that the evidence did not support an instruction on entrapment by estoppel.

## V: Plain Error

**[4]** In Defendant's final argument on appeal, she contends the trial court committed plain error by failing to instruct the jury on each element of each charge, and Defendant is therefore entitled to a new trial. We disagree.

Defendant did not properly preserve this issue for appeal because she failed to lodge an objection at trial. Defendant requests that the Court review for plain error. "Plain error analysis applies to evidentiary matters and jury instructions." *State v. Garcell*, 363 N.C. 10, 35, 678 S.E.2d 618, 634 (2009) (citation omitted). "A prerequisite to our engaging in a 'plain error' analysis is the determination that the instruction complained of constitutes error at all[;] [t]hen, [b]efore deciding that an error by the trial court amounts to plain error, the appellate court must be convinced that absent the error the jury probably would have reached a different verdict." *State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468, *cert denied*, 479 U.S. 836, 107 S. Ct. 133, 93 L. Ed. 2d 77 (1986) (quotation omitted). Our Courts have further stated, with regard to plain error review, the following:

> [T]he plain error rule . . . is always to be applied cautiously and only in the exceptional case where, after reviewing the entire record, it can be said the claimed error is a *fundamental* error, something so basic, so prejudicial, so lacking in its elements that justice cannot have been done, or where [the error] is grave error which amounts to a denial of a fundamental right of the accused, or the error has

3. This Court is not bound by the decisions of the Ninth Circuit, and is free to adopt the rule of the dissenting opinion in *Tallmadge* and the Eighth and Eleventh Circuits. *In re Truesdell*, 313 N.C. 421, 428-29, 329 S.E.2d 630, 634-35 (1985) (stating that "[a]lthough we recognize that this Court is not bound by the decision from the Federal court, we are nevertheless mindful of the legal maxim, *ratio est legis amina*, reason is the soul of the law"); *Brown v. Centex Homes*, 171 N.C. App. 741, 744, 615 S.E.2d 86, 88 (2005) ("Although we are not bound by federal case law, we may find their analysis and holdings persuasive").

resulted in a miscarriage of justice or in the denial to appellant of a fair trial or where the error is such as to seriously affect the fairness, integrity or public reputation of judicial proceedings or where it can be fairly said the instructional mistake had a probable impact on the jury's finding that the defendant was guilty.

*State v. Odom*, 307 N.C. 655, 660, 300 S.E.2d 375, 378 (1983) (quotation omitted) (emphasis in original). Defendant bears the burden of showing that an error arose to the level of plain error. *State v. Bishop*, 346 N.C. 365, 385, 488 S.E.2d 769, 779 (1997).

"The trial judge has great discretion in the manner in which he charges the jury, but he must explain every essential element of the offense charged." *State v. Young*, 16 N.C. App. 101, 106, 191 S.E.2d 369, 373 (1972).

In this case, we note that Defendant does not argue that the trial court failed to explain to the jury every essential element of the crimes charged, but rather, Defendant takes issue with the fact that the trial court gave "a generic instruction to the jury for the categories of the charges." This Court has held that similar jury instructions, categorizing multiple identical charges in one instruction, did not constitute plain error. *State v. Evans*, 162 N.C. App. 540, 544, 591 S.E.2d 564, 566 (2004). The trial court in this case provided the jury with a copy of the instructions and separate verdict sheets clearly identifying the separate charges. However, the dispositive point on this issue is that Defendant has failed to explain in her brief how any alleged error by the trial court in categorizing the jury instructions prejudiced her trial. Because Defendant bears the burden of showing that an error arose to the level of plain error, *Bishop*, 346 N.C. at 385, 488 S.E.2d at 779, and because Defendant failed to meet this burden, we conclude the trial court did not commit plain error in its jury instructions on the elements of the offenses in this case.

In summary, we conclude there was no prejudicial error in the judgments convicting Defendant in Case Nos. 10 CRS 1557, 10 CRS 1558, and 10 CRS 1559. However, we further conclude the portion of the judgment convicting Defendant in Case No. 10 CRS 1560 for a violation of N.C. Gen. Stat. § 14-454.1(b) must be arrested.

NO ERROR, in part, JUDGMENT ARRESTED, in part.

Judges STEELMAN and BEASLEY concur.